STATE, RESPONDENT, v. AMERICAN SURETY COMPANY OF NEW YORK, APPELLANT.

(No. 6,079.)

(Submitted February 18, 1927. Decided March 17, 1927.)

[255 Pac. 1063.]

*Sureties—State Timber Sale Contracts—Surety Company Bonds —Nature of Undertakings—Effect of Failure of State to Enforce Payment by Buyer — Pleading and Practice — Striking Pleadings as Sham — Motion to Strike in Effect Demurrer.*

Pleading and Practice—Striking Pleading as Sham—When Proper.
1. Where, after a general demurrer to certain affirmative defenses in an action on a surety company's bond had been sustained as not presenting a defense, defendant in an amended answer repleaded them, the court, under section 9166, Revised Codes of 1921, properly ordered them stricken as sham.

[78 Mont. 504.]

Same—Motion to Strike Pleading in Effect a Demurrer.
    2.  A motion to strike a portion of a pleading is in effect a demurrer to the sufficiency of the portion attacked.

Surety Company Bonds—Nature of Undertakings.
    3.  Surety company bonds are regarded as contracts of insurance and are construed most strongly against the surety.

Same—State Timber Sales—What not an Unauthorized. Modification of Contract of Surety by State.
    4.  The surety on a bond to insure payment for timber cut on state lands is not released from liability for failure of the state to enforce payment against the buyer or to avail itself of other safeguards authorized by the contract between it and him, on the theory that thereby such contract was materially modified without the surety's knowledge or consent, since those provisions were inserted in the contract as further protection to the state and not for the benefit of the surety and the contract did not form any part of the surety's undertaking.

Same—Contract for Sale of State Timber and Contract of Surety Separate Engagements—Rule of Construction.
    5.  The rule that more than one contract relating to the same subject matter, between the same parties, and made as parts of substantially one transaction, must be construed together (sec. 7533, Rev. Codes 1921) has no application in an action on a surety bond conditioned to pay the amount found to be due under the terms of a contract for the sale of state timber if the buyer failed to pay, the parties not being the same and the obligations thereunder being entirely separate and distinct.

Same—State Timber Contracts—Contract Securing Payment One of Surety, not Guaranty.
    6.  The contract of a surety company under which it binds itself, agreeably to the statute upon the subject, to pay the state the moneys found due it under a timber sale contract where the buyer fails to pay is one of surety, and not one of guaranty, and by its execution the company becomes responsible to the state for the amount due equally with its principal.

---

[1]    Pleading, 31 **Cyc.**, p. 629, n. 25.
[2]    Pleading, 31 **Cyc.**, p. 619, n. 64.
[3]    Principal and Surety, 32 **Cyc.**, p. 307, n. 93, 94.
[4]    Principal and Surety, 32 **Cyc.**, p. 179, n. 83.
[5, 6]    Contracts, 13 **C. J.**, sec. 487, p. 529, n. 53, p. 530, **n. 60.**
Guaranty, 28 **C. J.**, sec. 4, p. 890, n. 41; sec. 5, p. 890, n. 44.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

---

2.  See 21 **R. C. L.** 513.
3.  Liability of surety company, see note in 12 **A. L. R.** 382.  See, also, 21 **R. C. L.** 1160.

Action by the state against the American Surety Company of New York. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. Charles N. Madeen,* for Appellant, submitted an original and a reply brief; *Mr. H. H. Parsons,* of Counsel, argued the cause orally.

The appellant as guarantor or surety was released and exonerated by the waiver and release by respondent of its lien and consent to sale of the logs, thereby destroying appellant's right of subrogation pleaded as a defense in amended answer stricken out.

If the creditor has a surety or guarantor for the payment of the debt or performance of the contract, and also has a lien or other claim on the property of the principal as security for the same, and relinquishes such lien or claim by his act or failure to act, when it was his duty to do so, and such lien or security is rendered unavailable, the surety is discharged, for the surety, upon payment of the debt or performance of the obligation, is entitled to subrogation to all the securities which the creditor may have at any time acquired, and if this right is destroyed, or made unavailing by the act, or failure to act, of the creditor, the surety is discharged to the extent he is injured. (*Dodd* v. *Vucovich,* 38 Mont. 188, 99 Pac. 296; *Security State Bank* v. *Dawson* (Tex. Civ. App.), 261 S. W. 821; *Seymour* v. *Bank,* 157 Ga. 99, 121 S. E. 578; *Tennessee Valley School Dist.* v. *United States F. & G. Co.* (Tex. Civ. App.), 247 S. W. 595; *Central State Bank* v. *Ford,* 194 Iowa, 904, 187 N. W. 476; *Hunter* v. *Huffman,* 108 Neb. 729, 189 N. W. 166; *Whittlesey* v. *Herbrand Co.,* 217 Mich. 625, 187 N. W. 279; *Stephenson* v. *Nelson* (Tex. Civ. App.), 233 S. W. 1000; *Alexander Lumber Co.* v. *Aetna Accident & Liability,* 296 Ill. 500, 129 N. E. 871; *Kansas City, etc.,* v. *Southern Surety Co.,* 203 Mo. App. 148, 219 S. W. 727; *Shores-Mueller Co.* v. *Palmer,* 141 Ark. 64, 216 S. W. 295; *Defiance Mach.*

*Works* v. *Gill*, 170 Wis. 477, 175 N. W. 940; *Watson-Christensen Lumber Co.* v. *Maund* (Tex. Civ. App.), 199 S. W. 894; *Chandler Lumber Co.* v. *Radke*, 136 Wis. 495, 19 L. R. A. (n. s.) 907, 22 L. R. A. (n. s.) 713, 118 N. W. 185; *Burr* v. *Gardella*, 53 Cal. App. 377, 200 Pac. 493; *Ely* v. *Liscomb*, 24 Cal. App. 224, 140 Pac. 1086; *American Bonding Co.* v. *Pueblo Investment Co.*, 150 Fed. 17, 9 L. R. A. (n. s.) 557.) The doctrine of subrogation is invoked by courts of equity to the end that justice may be done as nearly as possible, its application depending on the circumstances of each particular case.

The allegations stricken among other things set forth (a) that the state failed and neglected to demand payment, and that had it done so, Normandeau was able to and would have paid the same; (b) that respondent waived right to retain possession, waived its lien on logs, and consented to and permitted Normandeau to dispose of same without requiring payment and without notice to appellant; (c) that Normandeau sold and dissipated proceeds, became insolvent, and, since receiving knowledge thereof, appellant has been unable to secure itself against loss, and is without recourse or remedy; (d) that, by reason thereof, respondent is now and ought to be estopped from claiming payment from appellant, and appellant ought to be and is released and discharged from liability on said bond.

The motion to strike is in effect a demurrer; the allegations of the defense struck out therefor stand admitted. (*Como Orchard Land Co.* v. *Markham*, 54 Mont. 438, 171 Pac. 274; *State ex rel. Juckem* v. *District Court*, 57 Mont. 315, 188 Pac. 137.) The facts so pleaded clearly bring the case within the decisions above cited.

*Mr. L. A. Foot*, Attorney General, and *Mr. C. N. Davidson*, Assistant Attorney General, submitted a brief; *Mr. Davidson* argued the cause orally.

The rule of *strictissimi juris* does not apply to appellant. It is a paid surety company organized for profit and is not

entitled to have its contract construed by the rule of *strictissimi juris* applicable to private or voluntary sureties who become such merely for accommodation. That the rule as applied to the contracts of accommodation sureties is not applicable to contracts of paid sureties is now universally recognized by court and text-writers. (See 21 R. C. L., sec. 200; *Royal Indemnity Co.* v. *Northern Granite & S. Co.*, 12 A. L. R. 382, note; *Atlantic Trust etc. Co.* v. *Laurinburg*, 163 Fed. 690, 90 C. C. A. 274; *American Surety Co.* v. *Pauly*, 170 U. S. 133, 42 L. Ed. 977, 18 Sup. Ct. Rep. 552.) Contracts of surety companies are construed most strongly against them. (*Walker Realty Co.* v. *American Surety Co.*, 60 Utah, 435, 211 Pac. 998.)

Even where the rule of *strictissimi juris* is applicable, the surety is not released by failure of the obligee to pursue and exhaust his remedy against the principal. It was as much the duty of the defendant as the state officers to know at all times the financial condition of its principal. It has executed a bond insuring the purchase price of the timber cut, and why should it be excused if it failed to keep informed concerning the failure of its principal to pay? We fail to see how defendant can consistently contend that plaintiff should have kept itself informed. (*Walker Realty Co.* v. *American Surety Co., supra.*)

The appellant does not allege that it ever made any investigation or attempt to find out whether its principal was making payments or that it ever made any investigation or attempted investigation or inquired of the state or any of its officers to ascertain whether the things complained of were being done, nor is there any allegation that the surety required the creditor to proceed against the principal. Revised Codes of 1921, section 8203, indicates that the surety must himself be active and not remain purely negative and then be heard to complain about what was not done. (*Smith* v. *Freyler*, 4 Mont. 489, 47 Am. Rep. 358, 1 Pac. 214.)

The surety's contract is an original one, and it is his duty equally with the principal to pay it when it becomes due, not that he will pay it in case the payee cannot by diligence enforce payment by the principal, so "where the creditor represented that the accounts of the principal would be audited every two weeks, and the surety signed the bond in reliance that he would have the benefit of this safeguard, it was held not to be a defense that the creditor failed to do as stipulated," citing *Benham* v. *Assurance Co.,* 7 Welsb, H. & G. 744; *Towle* v. *Nat. Guardian Assur. Society,* 3 Giff. 42. (*Miller* v. *Ridgley,* 22 Fed. 899; *Milan Bank* v. *Richmond,* 235 Mo. 532, 139 S. W. 352.)

In many respects the allegations which were stricken in this case were identical with those set up in the case of *Fuller* v. *Tomlinson Bros.,* 58 Iowa, 111, 12 N. W. 127.

In *Whitehouse* v. *American Surety Co.,* 117 Iowa, 328, 90 N. W. 727, the court said: "The law, in the absence of special statute, annexes no condition requiring the creditor * * * to do any act, no matter what his opportunity to procure security. * * * He may remain entirely passive, and rely on the undertaking of the surety. * * * What shall be deemed a security, within the meaning of these rules, is a matter upon which there has been some contrariety of decision. But we are inclined to the view, that it must be a mortgage, pledge, or lien—some right to or interest in the property which the creditor can hold in trust for the surety, and to which the surety may be subrogated." (See, also, *National Exch. Bank* v. *Kilpatric,* 204 Mo. 119, 120 Am. St. Rep. 689, 102 S. W. 499; *Morrison* v. *Citizens' Nat. Bank,* 65 N. H. 253, 23 Am. St. Rep. 39, 9 L. R. A. 282, 20 Atl. 300; *Johnson* v. *Planters' Bank,* 4 Smedes & M. (Miss.) 165, 43 Am. Dec. 480; *Fanning* v. *Murphy,* 126 Wis. 538, 110 Am. St. Rep. 946, 5 Ann. Cas. 435, 4 L. R. A. (n. s.) 666, 105 N. W. 1056; *Carver* v. *Steele,* 116 Cal. 116, 58 Am. St. Rep. 156, 47 Pac. 1007; *Clopton* v. *Spratt,* 52 Miss. 251.)

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted to recover from the defendant as surety on a bond an amount alleged to be due the plaintiff under the terms of a contract made with the state by one Pat Normandeau for the purchase of timber. The defendant filed an answer to the plaintiff's complaint, to which the court sustained a general demurrer with leave to the defendant to plead further. A second amended answer was filed by the defendant, as to which the plaintiff moved the court to strike out the affirmative defenses pleaded, as frivolous and sham because their insufficiency had already been determined by the court's ruling on the demurrer to the answer previously filed. This motion was by the court sustained. Subsequent thereto the cause was brought on for trial before the court sitting with a jury. At the conclusion of all of the evidence offered in support of the plaintiff's case the defendant moved the court for a nonsuit, which motion was denied. Thereupon the defendant rested without the introduction of any evidence, and moved the court for a directed verdict, which motion was denied. Plaintiff's counsel thereupon moved the court to direct a verdict in plaintiff's favor, which motion was granted, and a verdict accordingly returned in plaintiff's favor for the sum of $7,002.56, together with interest thereon from September 4, 1920, at the rate of eight per cent per annum. Judgment was entered upon the verdict that the plaintiff do have and recover from the defendant "the sum of $7,002.56, together with interest thereon in the amount of $3,197.80, with interest on the whole amount at eight per cent per annum from the date hereof until paid," together with plaintiff's costs. The defendant moved the court for a new trial, which motion was denied by reason of the court's failure to act thereon. The appeal is from the judgment.

Of the several assignments of error made by the defendant, but one question is presented necessary to be considered, which in our opinion is determinative of this appeal, *viz.:* Did the

court err in striking out the affirmative defenses pleaded in the defendant answer?

Briefly stated the affirmative defenses relied upon by the defendant were that the plaintiff did not hold Normandeau to a strict compliance of his contract in accordance with its terms, thereby waiving its lien on the timber and depriving the defendant of its right of subrogation. It is by the defendant alleged that the defendant in the execution of its bond, relied and depended upon the state of Montana to exercise its rights under the contract, and to require the purchaser of the timber to make the payments and observe all the provisions and conditions of the contract. In this connection it is averred that the contract among other of its terms, provides: That all timber cut by the purchaser, suitable for lumber, shall be marked by him as soon as cut with the log mark agreed upon, and that all such timber shall remain the absolute property of the state of Montana until paid for, and shall not be sold, transferred or manufactured into lumber until the amount due the state is fully paid; that the state forester shall cause all logs cut to be scaled and make a total report of the same to the state board of land commissioners on or before the first day of every month, during the life of the permit and contract, showing the name of the party cutting, description of the land cut upon, number of logs cut and marked and mark placed thereon, the total number of feet and the value thereof per thousand feet, *etc.*

"Upon receipt of such report from the state forester, the party of the first part [the state board of land commissioners] shall draw duplicate draft for the amount found due, one of which shall be delivered to the register of state lands, and the other forwarded to the party of the second part herein [Normandeau].

"The party of the second part shall then immediately make payment of the required amount to the register of state lands, and take duplicate receipt therefor, one of which shall be returned to the state board of land commissioners, who shall

thereupon execute a release of the logs so paid for, and a transfer of the mark thereon; but in no case shall such release or transfer be made until the lien of the state for the purchase price for said logs has been fully paid." This contract bears date March 18, 1919, and was executed by the state board of land commissioners and Pat Normandeau.

The bond in suit was executed on the seventh day of April, 1919, by Pat Normandeau, as principal and the defendant company as surety, in favor of the state of Montana, and it is recited therein that whereas Pat Normandeau made application to cut live timber on lands described, in Missoula county; and whereas subsequently the register of state lands offered the live timber on the lands described for sale at public auction to the highest bidder; and whereas at such sale the principal, Pat Normandeau, was the highest and best bidder for such timber, and the same was sold to him for the sum of $3.50 per thousand feet, board measurement: "Now therefore, if the said Pat Normandeau shall pay to the register of state lands, of the state of Montana, the amount that may be found due, under the terms of the permit and contract, and according to the provisions of law, and shall cut and remove said live timber in accordance with the rules and regulations as prescribed in said permit and contract, then this obligation shall be null and void, otherwise to remain in full force and effect."

It is provided by statute that "sham and irrelevant answers [1] and replies, and irrelevant and redundant matter inserted in a pleading, may be stricken out, upon such terms as the court may, in its discretion, impose." (Sec. 9166, Rev. Codes 1921.)

Under authority of this enactment, we are of opinion that the court properly sustained the plaintiff's motion to strike the affirmative defenses pleaded in the answer. As these allegations constituted no defense at all, it was proper for the court to strike them from the answer as sham. Their insuffi-

ciency had already been declared by the court's ruling on the demurrer to the first amended answer, and a repleading of them in the second amended answer justified their being [2] stricken therefrom upon plaintiff's motion. The motion was in effect a further demurrer to their sufficiency. (*Como Orchard Land Co.* v. *Markham*, 54 Mont. 438, 171 Pac. 274; *State ex rel. Juckem* v. *District Court*, 57 Mont. 315, 188 Pac. 137; *Plymouth Gold Min. Co.* v. *United States F. & G. Co.*, 35 Mont. 23, 10 Ann. Cas. 951, 88 Pac. 565.) They did not constitute a legal defense, and had no place before the court in determining the issues presented, as will hereinafter be pointed out. The allegations were properly stricken from the answer as incompatible with the law. (*McDonald* v. *Pincus*, 13 Mont. 83, 32 Pac. 283.)

It is contended by defendant's learned counsel that the contract with Normandeau for the sale of the timber was materially modified by acquiescence on the part of the state, without the defendant's knowledge or consent, which has effected a complete release of it from all liability upon its bond.

The universal rule is that in construing the bond of a surety company, acting for compensation, the contract is construed [3] most strongly against the surety, and in favor of the indemnity which the obligee has reasonable grounds to expect. Such contracts are generally regarded as contracts of insurance, and are construed most strictly against the surety. (Note to the case of *Royal Indemnity Co.* v. *Northern Granite & S. Co.*, 12 A. L. R. 382; 21 R. C. L., p. 1160.) However, in this case, under the admitted facts, in our opinion no different rule is applicable than is generally recognized in the case of ordinary sureties for accommodation. The liability of the surety is made plain from the language employed in the bond itself.

The bond in question was furnished by the purchaser of [4] the timber in compliance with the statute. It is required that before executing a permit to cut timber on state lands, the state board of land commissioners shall exact from the

purchaser "a bond to the State of Montana, in double the amount of the estimated value of the timber permitted to be cut, with sufficient sureties, to be approved by the board, *conditioned upon the payment to the register of state lands of the amount that may be found due under the terms of such permit, and according to the provisions of law;* and further conditioned upon the cutting of such timber in compliance with such rules and regulations as may be prescribed by the state board of land commissioners. (Sec. 1873, Rev. Codes 1921.) The defendant's contract and liability thereunder is wholly independent of the principal's obligation under the contract to purchase the timber, except as to the amount of money due to the state thereunder. The defendant contracted with full knowledge of the law and of the terms of its written obligation, and cannot now avoid responsibility by asserting that the state failed to avail itself of other safeguards authorized by the contract for the sale of the timber to insure payment of the money due for timber cut by the principal on the bond. The provisions of the contract with Normandeau for the sale of the timber were put therein as a further protection to the state, and not for the benefit of the surety on the bond. This is made plain by further provision in the statute that "proceedings on the bond shall not prevent the state board of land commissioners from seizing the logs at any time before the claim of the state is satisfied." (*Id.,* sec. 1877.) The bond is not made a part of the contract to cut the timber and pay therefor, by reference or otherwise. It is a direct undertaking such as is required by the statute (*Id.,* sec. 1873) to pay for the timber cut. It is an absolute, independent, promise to pay, defeasible only in the event the principal shall pay to the register of state lands "the amount that may be found to be due, under the terms of the permit and contract," according to law, "otherwise, to remain in full force and effect."

The contract follows the requirements of the statute relative to the administration of the state land business in the sale

of state timber.   (*Id.*, secs. 1872–1881.)   The bond is in form and substance that which is required to be exacted from the purchaser of state timber (*Id.*, sec. 1873) to insure the payment of the amount found to be due under the contract and the requirements of the law; not for the faithful performance of his contract according to its terms.   The permit issued by the state under its contract with Normandeau to cut and remove timber from state lands formed no part of the bond contract executed by the defendant forming the basis of this action.   Under the statute (*Id.*, sec. 1873) a sufficient bond is required as a condition precedent to the execution of a contract permitting the cutting and removal of state timber. Thus a distinction between the character of the obligations is drawn by the law itself.

We recognize the rule that more than one contract relating [5, 6]   to the same subject matter, between the same parties, and made as parts of substantially one transaction, are to be construed together.   (Sec. 7533, Rev. Codes 1921.)   But this principle is not applicable to the contracts in question, as they are entirely separate and distinct obligations, and the parties are not the same.   The bond is clearly a contract of suretyship conditioned to pay *the amount found to be due under the terms* of the contract for the sale of the timber.   The defendant by the execution of the bond became responsible to the state for the payment of the amount due for the timber cut equally with the principal.   (*Cole Mfg. Co.* v. *Morton,* 24 Mont. 58, 60 Pac. 587; *Emerson-Brantingham Imp. Co.* v. *Raugstad,* 65 Mont. 297, 211 Pac. 305; *Square Butte State Bank* v. *Ballard,* 64 Mont. 554, 210 Pac. 889.)   It was in no manner a guaranty or collateral to the performance of an independent agreement as in the case of *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197.   (*State ex rel. Barnett* v. *Reynolds,* 68 Mont. 572, 220 Pac. 525.)

As the affirmative defenses attempted to be pleaded by the defendant do not constitute a legal defense, and the other

errors assigned appear to us to be without merit, the judgment
is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES
MYERS, STARK and MATTHEWS concur.