AMERICAN SURETY COMPANY OF NEW YORK, RE-
SPONDENT, *v.* BUTLER ET AL., APPELLANTS.

(No. 6,526.)

(Submitted December 2, 1929.   Decided February 13, 1930.)

[284 Pac. 1011.]

*Mr. Walter S. Hartman* and *Mr. Roy M. Keister,* for Appellants, submitted an original and a reply brief; *Mr. Hartman* argued the cause orally.

*Mr. George Y. Patten,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Defendants have appealed from a judgment in favor of plaintiff on a bond given by them to indemnify the plaintiff against loss by reason of having executed a "trackbuyer's bond" in which the Gallatin Valley Union is the principal. The undisputed facts are as follows:

In June, 1922, plaintiff agreed to execute a "trackbuyer's bond," which was required by the Gallatin Valley Union as a prerequisite to doing business as a trackbuyer from and after July 1 of that year, on condition that the union would first secure for it an indemnity bond. The surety prepared and sent to the secretary of the union a makeshift bond or "indemnity agreement," drawn on a form prepared for the indemnification of the surety from loss on bonds executed on construction contracts; much of the printed matter therein is wholly

inapplicable to the form of indemnity required. However, the proposing indemnitors fully understood and agreed that the instrument they were to sign was to be executed for the purpose of indemnifying the surety from loss by reason of thereafter executing a "trackbuyer's bond," which would be acceptable to the state commissioner of agriculture. They inquired of the secretary of the union as to the nature of the liability of the surety on the bond to be furnished, no copy or form thereof being present, and were assured that the liability would be only for loss by reason of the failure of the union to perform the duties imposed upon it by law, and would not, under any circumstances, extend to losses suffered by reason of the failure of the union to pay for grain purchased. With this assurance, the defendants executed the indemnity agreement, which contains apt provisions rendering the signers liable to the surety for all sums it would be required to pay by reason of having executed the "trackbuyer's bond" described in the instrument, and to "place the surety in funds to meet the same before it shall be required to make payment." On signing the indemnity agreement, the defendants were required to furnish property statements showing their financial responsibility.

The indemnity agreement and financial statements were forwarded to the surety, and thereafter, on July 1, 1922, it executed a bond in the usual form in the penal sum of $10,000, running to the State of Montana, the condition of which contains a double liability, (a) that the union will "faithfully account and report to all persons from whom grain is received and pay in full for all grain purchased, and (b) that the Union will faithfully comply with all the laws of the State of Montana and the regulations of the Department of Agriculture relating to the business of trackbuying." This is a bond continued in force from year to year by the payment of an annual premium, while section 3589, Revised Codes of 1921, at that time required such a principal "on or before the first day of July of each year" to give a bond "approved by the commissioner of agriculture * * * conditioned upon the faithful

performance of the acts and duties enjoined upon them by law."

In March, 1924, the union was declared bankrupt, and thereupon action was brought, on behalf of creditors holding claims for grain unpaid for, against the surety and on its bond. This action is referred to as "cause No. 8259." In the complaint filed it is alleged that the bond "was executed in conformity with the provisions of section 3589 * * * and for all the purposes therein expressed." The answer filed was drawn and verified by counsel for the surety, and therein it is alleged that section 3589 "does not provide for the provisions of said bond, as executed," and "that the provisions of the bond were had and made in conformity with an understanding with the commissioner of agriculture * * * who prepared the form and inserted the conditions."

At the request of counsel for the surety, counsel for the indemnitors assisted in the trial, and desired to raise the question of the validity of the bond, but counsel for the surety would not do so, because of the manner in which the bond was agreed upon, as above set out, and it was agreed that their participation in the trial would not preclude them from thereafter raising the question.

The action resulted in judgment against the surety for the full amount of its bond, and thereupon it made written demand upon the indemnitors to be "put in funds" to pay the judgment; this the indemnitors refused to do, and this action on the indemnity agreement followed.

The indemnitors defended on the ground that they agreed to indemnify the surety against loss incurred by reason of executing a "trackbuyer's bond," required under the provisions of section 3589, and conditioned as therein specified, and therefore the indemnity agreement did not cover loss suffered by reason of the enlarged liability under the common-law bond executed by the surety subsequent to the execution of the indemnity agreement. The defendants challenged plaintiff's right to recover, by demurrer to the complaint, by objection to the introduction of any evidence, and by motion for nonsuit.

On the evidence the court found that the defendants knew when they signed the agreement that a "trackbuyer's bond," acceptable to the commissioner of agriculture, would be furnished, and that the plaintiff made no misrepresentations to them as to the nature of the bond to be furnished; that, after the bond was furnished, they knew that the union was doing business under and by virtue of the bond, and never inquired as to the conditions of the bond furnished; that it was to the interest of the defendants to have the union do business in their community and thus raise and maintain a high level of grain prices; that, on appearing in cause No. 8259 on behalf of the surety, counsel for defendants here reserved, for presentation in this action, the question as to the validity of the "trackbuyer's bond"; that, after the execution of the bond, the union engaged in the business of a trackbuyer, and over fifty per cent of all grain bought was actually shipped to grain markets in various parts of the United States.

From the facts found, the court concluded, as a matter of law, that, having had notice and knowledge of cause No. 8259, and, through their counsel, participated in the defense thereof, the judgment therein was conclusive against the defendants as to everything except the reserved question as to the validity of the "trackbuyer's bond"; that the indemnity agreement was valid, and bound the defendants to the full amount thereof; that the judgment in cause No. 8259 is a liability covered by the indemnity agreement, which defendants executed to cover the "trackbuyer's bond as it was written"; that, while the wording of the "trackbuyer's bond" was different, the conditions thereof were within the purview of section 3589, and created no greater liability than was imposed by law.

The court further concluded that, because the "trackbuyer's bond" was executed on the faith of the indemnity agreement theretofore executed, and the union did business during all of the period covered thereby, with the knowledge of the defendants, they are "estopped to question the validity of the track-

buyer's bond or the indemnity agreement," and that the "trackbuyer's bond" is not a burden on interstate commerce, and it and the statute under which it was required do not contravene the Constitution of the United States.

Judgment was duly entered against the defendants jointly and severally, and from this judgment they have appealed. By forty-five specifications of error they challenge the correctness of each of the above outlined findings of fact and conclusions of law and the ruling of the court on their demurrer, objection to the introduction of testimony, motion for nonsuit, and on the objections to certain specific testimony admitted and rejected.

The controlling questions presented by this array of specifications of error are: (1) As to whether or not the "trackbuyer's bond" executed by the surety imposed upon it a greater liability than the law required it to assume, and, if so, (2) whether or not the execution of the indemnity agreement prior to the execution thereof bound these defendants to reimburse the surety for losses suffered by reason of having assumed such greater liability; and (3) were the defendants, by reason of their participation in the defense of the surety in cause No. 8259, precluded or estopped from raising these questions in the instant case? In the interest of brevity, we will not maintain this sequence, but will consider the questions jointly, treating only with the fundamental principles underlying a proper determination of the case as a whole.

At the time the defendants signed the indemnity agreement, they were advised and believed that they were assuming no liability for loss by reason of the failure of the union to pay for grain purchased; this information came from the secretary of the union and, through him, from its attorney; but, if they were misled by this information, the surety was not at fault, as the secretary of the union was acting for it and not for the surety. (*W. T. Rawleigh Co.* v. *Washburn,* 80 Mont. 308, 260 Pac. 1039.)

No copy of the proposed "trackbuyer's bond" was submitted to the defendants, and the surety made no representations to

them other than the recitals contained in the draft of the indemnity agreement made by the surety. By this blank form they were advised that the surety would, on the faith of the indemnity agreement when executed, execute a "trackbuyer's bond" in favor of the state of Montana in the penal sum of $10,000, and that, by signing the indemnity agreement, they would become obligated to "indemnify and save harmless the surety from and against every claim, demand, liability, cost, charge, counsel fee, expense, suit, order, judgment and adjudication" which the surety would suffer by reason of executing the "trackbuyer's bond."

The indemnitors were chargeable with knowledge as to the statutory requirements regarding the bond to be executed and liability thereunder based on the duties which the principal on the bond was required to perform under the law. "The applicable statute is as much a part of the bond as if expressly written into it." (*State* v. *Rosman,* 84 Mont. 207, 274 Pac. 850, 852; *Home State Bank* v. *Swartz,* 72 Mont. 425, 234 Pac. 281.)

If, therefore, the surety executed the statutory bond, it became liable for the faithful performance, by the union, of all acts and duties enjoined upon it by law, for such is the requirement of the statute providing for such a bond (sec. 3589), and the indemnitors would be liable for any loss suffered by the surety by reason of executing such a bond; this they understood, and this liability they assumed when they signed the indemnity agreement. Further, they were chargeable with knowledge that the bond furnished by the surety must be acceptable to the commissioner of agriculture, for section 3589 so provides; but they were justified in assuming that the commissioner would merely approve a bond which met with all of the requirements of the statute, and were not required to anticipate that he would exact a bond fixing a liability in excess of those requirements.

If the statute imposed upon the union a duty to pay for all grain purchased, and liability for failure was within

the contemplation of the statutory bond, as declared by the trial court, the judgment must be affirmed. On the other hand, while the indemnity agreement is broad enough to cover any and all liability of the surety under its bond, however broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract (sec. 7539, Rev. Codes 1921), and must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful (sec. 7527, Id.).

If, as alleged in this plaintiff's answer in cause No. 8259, the bond furnished was not the statutory bond, but a common-law bond agreed upon between the surety and the commissioner of agriculture after the indemnity bond was executed, and, as the evidence clearly shows, the indemnitors did not intend to indemnify against loss for failure of the union to pay for grain, there was no meeting of minds as to this indemnity unless such liability was within the contemplation of the statutes on the subject.

What, then, is the statutory requirement regarding a "track-buyer's bond"? While there have been some changes made (Chap. 41, Laws 1923, and Chaps. 42 and 174, Laws 1925), the bond under consideration must be construed with reference to the law as it existed at the time the bond was executed (secs. 3555–3592, Rev. Codes 1921).

Section 3555 creates the department of agriculture, labor and industry, and declares its general purpose to be "the promotion of agricultural and labor interests of the state." It has five divisions, one being that of "grain standards and marketing" (sec. 3563), which is required to "enforce all the laws of the state * * * concerning the handling, weighing, grading, inspection, storage and marketing of grain, and the management of public warehouses" (sec. 3573). The term "warehouses" includes elevators, mills, etc., in which grain is received for storage, shipment and handling, while the term "trackbuyer" refers only to one "who

engages in the business of buying grain for shipment or milling in car-load lots, and who does not own, control, or operate a warehouse or public warehouse." (Sec. 3574.) A warehouseman is charged with the duty of delivering stored grain to the owner, on demand, or paying the market price therefor (sec. 3588), and, consequently, the commissioner is justified in exacting such a bond as was here given from a warehouseman, but nowhere in the law is there such a requirement of a "trackbuyer." In so far as trackbuyers are concerned, the declared functions of the state department have to do solely with inspection, weighing, etc., and, as to these functions, payment for grain purchased is wholly "unrelated." (*Shafer* v. *Farmers' Grain Co.,* 268 U. S. 189, 69 L. Ed. 909, 45 Sup. Ct. Rep. 481.)

There is cogent reason for the differentiation made by the legislative assembly of 1921. The relation between grain producers and warehousemen dealt with is that of bailor and bailee; title remains in the owner placing his grain in storage, and failure to deliver or pay constitutes conversion (*O'Neil* v. *Montana Elevator Co.,* 65 Mont. 259, 211 Pac. 222; *State ex rel. Broadwater Farms Co.* v. *Broadwater Elevator Co.,* 61 Mont. 215, 201 Pac. 687); their dealings have only to do with intrastate commerce, and are subject to regulation by the state (*Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Cargill Co.* v. *Minnesota,* 180 U. S. 452, 45 L. Ed. 619, 21 Sup. Ct. Rep. 423; *Merchants' Exchange* v. *Missouri,* 248 U. S. 365, 63 L. Ed. 300, 39 Sup. Ct. Rep. 114); while the relation between the grain producer and a trackbuyer is that of seller and purchaser, and, at least in the absence of state regulation, if the seller is willing to sell on credit, he stands in no different position than the seller of any other commodity; he must look to his contract, not to the statute, for the collection of his debt.

It is suggested that, by including trackbuyers in the provision dealing with warehousemen by amendment to section 3589 (Chap. 42, Laws 1925), the legislature of 1925 has construed the original section as requiring trackbuyers to pay for

grain purchased and their bonds as covering the faithful performance of that duty. While the legislative construction of a former Act is persuasive, it will only be adopted when clearly expressed and when it will render the statute construed valid and enforceable. The most that can be said of the amendment is that, in 1925, the legislature assumed that the Act of 1921 authorized the commissioner of agriculture to require a bond conditioned for the payment of all grain purchased by the principal. This was clearly an erroneous assumption, and the courts charged with a proper construction of a statute are at liberty to disregard legislative construction which is not, in their judgment, a correct exposition of the original Act. (25 Cyc. 1142.) We cannot, therefore, assume, contrary to its express declaration, that the legislature intended the provisions respecting warehousemen to apply to trackbuyers.

As the minds of the parties never met on the indemnity for losses suffered under the enlarged liability assumed by the surety, it is as though that liability was not included in the "trackbuyer's bond"; no agreement to assume liability, therefore, was ever made (13 C. J. 263), and nothing that transpired thereafter can estop the indemnitors from asserting nonliability.

While the surety might, and probably did, render itself liable for the full amount of the judgment in cause No. 8259, by the execution of its bond with full knowledge and agreement that it was executing a common-law bond in lieu of the statutory bond, the only issue tried in that cause was as to liability for nonpayment for grain. The liability of the indemnitors to the surety was not in issue, and the judgment was binding and conclusive only as to those matters decided in that action; it was, therefore, no bar to the defense made in this action, in spite of the fact that counsel for the indemnitors assisted counsel for the surety in its defense against liability not imposed by the statute.

It is therefore apparent that each of the questions above set out must be determined against liability of these defendants.

For the reasons stated, the judgment is reversed and the cause remanded to the district court of Gallatin county, with direction to enter judgment in favor of the defendants.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES FORD and ANGSTMAN, and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.

Rehearing denied February 25, 1930, MR. JUSTICE GALEN taking no part in the order denying the rehearing.