## AMERICAN SURETY COMPANY OF NEW YORK, APPELLANT, v. CLARKE, RECEIVER, RESPONDENT.

(No. 7,010.)

(Submitted February 28, 1933. Decided March 24, 1933.)

[20 Pac. (2d) 831.]

(1)

Messrs. *Wood & Cooke,* for Appellant, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

4

*Mr. Walter Aitken,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by plaintiff, American Surety Company of New York, from a judgment in favor of the defendant, Clarke, receiver.

Being desirous of becoming a depositary of county funds, the Home State Bank of Manhattan, Montana, and the surety company executed a surety bond to W. D. Bell as county treasurer of Gallatin county, Montana, in the sum of $8,000. The bond contained these provisions, among others:

"Now, therefore, the condition of the above obligation is such that, if the above bounden principal shall in due course pay on legal demand made during the term of this bond, all moneys deposited hereunder with it for account of the obligee, together with interest at the rate agreed upon, then this obligation shall be null and void; otherwise to remain in full force and effect."

"Fifth: That in case of payment of a loss on account of a default hereunder the surety shall be subrogated to such proportion of all the rights of the obligee growing out of such loss, including dividends paid and to be paid out of the estate of the principal, as the amount so paid by the surety bears to the total deposit hereunder at the time of such default, and simultaneously with such payment the obligee shall execute all papers required by the surety and render all assistance, not pecuniary, to secure to the surety the rights herein provided for."

Pursuant to court action, on July 31, 1924, the bank was declared insolvent, and George K. Clarke was appointed its

receiver. When the bank closed, the county treasurer had on deposit therein county funds in the sum of $20,804.34, for which the treasurer filed a claim in behalf of Gallatin county, and in due time a receiver's certificate of proof of the claim was issued to him. The deposit was secured by personal bonds in the aggregate sum of $15,500, in addition to the $8,000 surety bond, and also by collateral notes which were the property of the bank. When the case was tried, the treasurer had collected $4,179 only on account of the notes; he still held notes of the face value, without interest, of $9,046.14. The county has not been paid in full.

The surety company on demand paid to the county treasurer the penal sum of the bond, $8,000, but, by some arrangement which is not clear upon the record, the county treasurer paid back to the surety company the sum of $917.88. Thus the surety company actually paid the sum of $7,082.12 only. The original receiver's certificate, which was issued to the county treasurer for the claim of the county, was, at the request of the surety company, divided; the original certificate was canceled, and in lieu thereof two new certificates were issued, one for $13,668 and interest to the treasurer, and the other to the surety company for $7,054.89 and interest.

Whether material or not, during the negotiations between the representative of the surety company and the treasurer looking to the division of the certificate, the representative assured the treasurer that the surety company did not seek to take any advantage whatever under the new arrangement.

In 1928 the receiver was authorized by the court to pay to the general creditors a dividend of ten per cent. with a restriction which excluded the surety company from participating in the distribution. Thereafter the surety company asked and was granted leave to sue the receiver to test its right to share in the dividend under the terms of the receiver's certificate. Hence this suit.

Some questions of practice are presented, but we pass these in order to reach the main question.

Counsel for the plaintiff surety company recognize the rule that a surety may not claim subrogation against an insolvent debtor until the creditor is paid in full (*Jenkins* v. *National Surety Co.*, 277 U. S. 258, 48 Sup. Ct. Rep. 445, 72 L. Ed. 874; *Knaffl* v. *Knoxville Banking & Trust Co.*, 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C, 1181; 25 R. C. L. 1318; 60 C. J. 745), but assert that that rule applies to what they term legal subrogation, contending that plaintiff's claim rests upon conventional subrogation arising from the contractual provision (Fifth) in the bond. They quote from Stearns on Suretyship, third edition, section 260: "Conventional subrogation is the substitution of the surety in place of the creditor by agreement as distinguished from subrogation by operation of law where no such agreement is made. * * * Equitable subrogation cannot be enforced until the entire debt is paid, but conventional subrogation arises at such time, and for such part of the debt, as the parties in their agreement shall stipulate."

Under the doctrine of equitable subrogation, a *pro tanto* assignment or subrogation will not be allowed. The reason is that subrogation is a creature of equity, and will never be allowed to the prejudice of the creditor. (*Knaffl* v. *Knoxville Banking & Trust Co.*, supra.) If subrogation *pro tanto* be allowed, it would operate to place the surety upon a footing of equality with the holders of the unpaid part of the debt; and, if the property be insufficient to pay the remainder of the debt for which the surety is bound, "the loss would logically fall proportionately upon the creditor and upon the surety. Such a result would be grossly inequitable." (25 R. C. L. 1318; *New Jersey Midland R. Co.* v. *Wortendyke,* 27 N. J. Eq. 658.)

In the absence of contract, it is clear that the plaintiff would not be entitled to subrogation *pro tanto,* which brings us directly to the question whether the board of county commissioners had the authority to agree to the provisions of provision Fifth.

Section 4767, Revised Codes 1921, as amended by Chapter 89, section 1, Laws of 1923, provides in part that it shall be

the duty of the county treasurer to deposit all public moneys in his possession and under his control in a solvent bank or banks located in his county, subject to national supervision or state examination, which the board of county commissioners of his county may designate, and no other. The treasurer shall take from such bank such security as the board of county commissioners "may prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand together with the interest thereon. Such securities shall consist of bonds of some surety company empowered to do business in the State of Montana, government bonds or securities, state bonds or warrants, county bonds or warrants, or such other bonds or securities which are supported by general public taxation, (or personal bonds). * * * "

The statute became part of the contract, and it must be held that the parties had it in contemplation when the bond was executed and delivered. (*Home State Bank* v. *Swartz*, 72 Mont. 425, 234 Pac. 281.) "The applicable statute is as much a part of the bond as if expressly written into it." (*State* v. *Rosman*, 84 Mont. 207, 274 Pac. 850, 852; *Kelsey* v. *School District*, 84 Mont. 453, 276 Pac. 26; *American Surety Co.* v. *Butler*, 86 Mont. 584, 284 Pac. 1011.)

The authority of the board of county commissioners rests upon statutory powers expressly granted or upon powers necessarily implied from those granted, and persons who deal with the board are charged with notice of its limitations. (*Stange* v. *Esval*, 67 Mont. 301, 215 Pac. 807.)

Conceding that the language "such security as the board of county commissioners * * * may prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand together with the interest thereon," reposes in the county commissioners some discretionary power, the controlling purpose of the statute is expressed in the requirement that the security shall "insure the safety and prompt payment of all such deposits on demand."

It is not within the contemplation of the statute that the county commissioners may agree with a surety company which undertakes to secure the prompt payment of county funds deposited in a bank that upon the bank's failure, and before the county is paid in full, the surety company shall share with the county in dividends paid by the receiver of the insolvent bank. Such a course would decrease the county's dividends by the proportionate share received by the surety, and would affect adversely the public welfare, in that it would tend to impair the public revenue, eventually entailing increased taxation. This would be contrary to public policy. (*State* v. *Gateway Mortuaries*, 87 Mont. 225, 287 Pac. 156, 68 A. L. R. 1512; *Spaulding* v. *Maillet*, 57 Mont. 318, 188 Pac. 377.)

The policy of the law commands that the board receive only such securities as will insure the safety and prompt payment of county deposits. Permitting conventional subrogation in such case would permit a surety company which undertakes to secure the safety of the public funds to compete with the public treasury for reimbursement; thus the plaintiff under provision Fifth would be enabled indirectly to avoid a part of its liability on the bond.

The principle which forbids a surety from securing by independent contract with the debtor indemnity at the expense of the creditor whose claim he has undertaken to secure forbids subrogation here before the creditor is paid in full. (*Jenkins* v. *National Surety Co.*, supra; *Knaffl* v. *Knoxville Banking & Trust Co.*, supra; *Olsness* v. *Baird*, 52 N. D. 1. 201 N. W. 993; *Maryland Casualty Co.* v. *Fouts*, (C. C. A.) 11 Fed. (2d) 71, 46 A. L. R. 852; *United States Fidelity & Guaranty Co.* v. *Centropolis Bank*, (C. C. A.) 17 Fed. (2d) 913, 53 A. L. R. 295.)

The judgment is affirmed.

Associate Justices Angstman, Matthews, Stewart and Anderson concur.

Rehearing denied April 15, 1933.