WILBUR C. KOHLES, Plaintiff and Appellant, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Corporation, Defendant and Respondent.

No. 10733

Submitted September 9, 1964. Decided November 20, 1964.

396 P.2d 724.

James A. Nelson and Rae V. Kalbfleisch, Shelby, for appellant.

Ward A. Shanahan, Weir, Gough & Booth, Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a summary judgment for St. Paul Fire & Marine Insurance Company, defendant and respondent, and against Wilbur C. Kohles, plaintiff and appellant.

Wilbur C. Kohles, plaintiff, made a written contract on April 4, 1960, with E. L. McDonnell & Co., hereinafter referred to as McDonnell, for the sale and delivery of between 200,000 and 300,000 pounds of oriental mustard seed at $5.75 per hundred pounds. At the time of making the contract plaintiff had the mustard seed on hand in storage on his farm. None of it was planted or harvested in 1960, nor was it a growing crop during that year. Pursuant to the requirements of section 3-1908, R.C.M.1947, McDonnell had posted bond in the office of the State Commissioner of Agriculture at Helena, Montana, with itself as principal and St. Paul Fire & Marine Insurance Company, defendant, as surety, in the penal sum of $10,00.00, conditioned that McDonnell pay for the contracted mustard seed during the interval March 1, 1960, to March 1, 1961, to growers who fall within the protection of the bond.

Plaintiff sold and delivered 219,460 pounds of mustard seed to the McDonnell elevator at Sunburst, Montana, under the aforesaid contract between April 4 and April 6, 1960, for which McDonnell became indebted to plaintiff in the sum of $12,430.35 after dockage, of which sum no part has been paid plaintiff. McDonnell became bankrupt in July of 1960. The facts were established by Requests for Admissions and the Answers thereto, and findings of the district court. Both parties moved for summary judgment. The district court granted defendant's motion for summary judgment and denied plaintiff's. This appeal followed.

The sole question before this court is whether grower protection under the mustard seed bond extends to mustard seed on hand as distinguished from mustard seed to be harvested.

The mustard seed contractor bond in question is governed by section 3-1908, which reads as follows:

"All persons, firms, co-partnerships, corporations and associations engaging in the *business of contracting in advance of harvesting for the purchase of mustard seed crops to be paid for on delivery of said crop or crops,* shall, on or before the first day of March of each year, pay to the state treasurer of Montana a license fee in the sum of ten dollars ($10.00) for the privilege of carrying on such business, and shall on or before said first day of March of each year, give a bond with good and sufficient sureties approved by the commissioner of agriculture of the State of Montana, in such sums as the commissioner may require but not less than ten thousand dollars ($10,000.00) conditioned upon the payment for such contracted seed at the price or prices specified in such contract, and upon the payment of such license fee of ten dollars ($10.00) and upon the approval of such bond by the commissioner of agriculture, said commissioner shall issue to such person or persons, firm, co-partnership, corporation or association a license to engage in such business in the state of Montana for a period of one year.

"Any person who shall commence the business aforesaid after the first day of March of any year shall be required to pay said license fee and to furnish such bond before engaging in or carrying on such businss." (Emphasis supplied.)

When a compensated surety, such as the defendant in the instant case, has been involved, this court has stated the following rule:

"The universal rule is that in construing the bond of a surety company, acting for compensation, the contract is *construed most strongly against the surety,* and in favor of the indemnity which the obligee has *reasonable grounds to expect.*

Such contracts are generally regarded as contracts of insurance, and are construed most strictly against the surety." (Emphasis supplied.) State v. American Surety Co. of New York, 78 Mont. 504, 255 P. 1063; Montana Auto Finance Corporation v. Federal Surety Co., 85 Mont. 149, 278 P. 116.

■ Thus, it is necessary for this court to examine the bond given by defendant to see whether it can reasonably be construed in favor of plaintiff and against defendant, even with a strong interpretation of the bond against defendant. The significant portion of the bond in question is:

"WHEREAS: the above-bonded E. L. McDonnell & Co., Inc., has applied to the Division of Grain Standards and Marketing of the the Department of Agriculture of the State of Montana for a license to conduct and carry on *the business of contracting in advance of harvesting for the purchase of mustard seed crops to be paid for on delivery of said crop or crops,* in the State of Montana, for the period beginning March 1, 1960, and ending March 1, 1961, in accordance with the laws of the State of Montana and the rules and regulations of the Department of Agriculture.

"NOW, THEREFORE, if the above-bonded E. L. McDonnell & Co., Inc., shall pay for such contracted seed at the price or prices specified in such contract and according to the terms thereof, and shall in all respects observe and comply with all the laws of the State and the rules and regulations of the Department of Agriculture, in relation thereto, then this obligation to be void, otherwise to remain in full force and effect." (Emphasis supplied.)

■ The mustard seed contractor bond, above-quoted, was taken out by McDonnell pursuant to a statutory requirement stated in section 3-1908, supra. There are no decisions of this court interpreting the provisions of this particular statute. However, it is the law in Montana that if a bond is executed in accordance with a statutory requirement, then such a statute constitutes a part of the bond as if incorporated in it, and

the bond must be construed in connection with the statute. American Surety Co. of New York v. Butler, 86 Mont. 584, 284 P. 1011; State for Use and Benefit of Broadwater County v. Rosman, 84 Mont. 207, 274 P. 850; American Surety Co. of New York v. Clarke, 94 Mont. 1, 20 P.2d 831. Consequently, in construing the bond in the instant case, it is necessary to consider section 3-1908, supra, as part of the bond itself.

The statute refers to the requirement of a mustard seed contractor bond where a person or business entity is planning to engage in or carry on "the business of *contracting in advance of harvesting* for the purchase of mustard seed crops to be paid for on delivery of said crop or crops." Section 3-1908, supra. Because the above-quoted language of the statute was also employed in the bond itself, plaintiff was or certainly should have been aware of it.

Plaintiff did not contract "in advance of harvesting" to sell a mustard seed crop to McDonnell to be paid for "on delivery of said crop." Instead, plaintiff sold a commodity "oriental mustard seed" on April 4, 1960, to E. L. McDonnell & Co., f.o.b. Sunburst Elevator. Delivery was to be made "on or before February 1, 1961, buyer's option." On April 5, 1960, plaintiff delivered this seed to McDonnell as evidenced by plaintiff's warehouse receipts. Plaintiff has admitted that the mustard seed referred to in the contract with McDonnell had been harvested at the time the agreement was made, that is was not a growing crop on April 4, 1960, and that it was neither harvested nor planted during 1960.

It is apparent to this court that the purpose of section 3-1908, spra, is to benefit those farmers who have sold their crops "in advance of harvest." The purpose of the statute is not to benefit plaintiff in the instant case where the mustard seed had been harvested at the time the agreement was made, was not a growing crop at that time, and was neither planted nor harvested during 1960 after the agreement was made. It appears to this court, although it is not material to the de-

cision in the instant case, that plaintiff was covered under a "grain dealer and public warehouseman bond" which was executed by the warehouseman pursuant to section 3-228, R.C.M.1947. Any person who sold or delivered grain (which includes mustard seed) to the warehouseman came within the protection of that bond. We realize that the proceeds of the "grain dealer and public warehouseman bond," which is $15,-000.00, will probably not be enough to completely idemnify plaintiff after the funds are split up among all warehouse receipt holders, but nevertheless, any rights that plaintiff may have would need to be based upon that bond and not the mustard seed contractor bond.

In conclusion, the liability of a surety cannot be extended beyond that which the law has required it to assume and to discharge. To hold defendant liable in the instant case would not be reasonable, even with a strong construction of the agreement against defendant, for the loss suffered by plaintiff was certainly not contemplated by section 3-1908, R.C.M. 1947, nor by the language of the bond itself.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and DOYLE, concur.