MONTANA AUTO FINANCE CORPORATION, Respondent,
*v.* FEDERAL SURETY COMPANY, Appellant.

(No. 6,444.)

(Submitted April 6, 1929.  Decided June 6, 1929.)

[278 Pac. 116.]

Mr. *Warren Toole* and Mr. *O. B. Kotz,* for Appellant, submitted an original and a reply brief; Mr. *Toole* argued the cause orally.

154

*Messrs. Hurd, Hall & McCabe,* for Respondent, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

Samuel M. Weekes was employed by plaintiff as its secretary and treasurer. Defendant, by its bond duly executed and delivered, on June 12, 1923, undertook to reimburse plaintiff "for such pecuniary loss as the employer [plaintiff] shall sustain of money, * * * belonging to the employer for which the employer is responsible, amounting to any act or acts of larceny or embezzlement on the part of the employee," etc. The bond was effective for one year. On June 10, 1924, in consideration of an additional premium, it was renewed and extended until June 20, 1925.

This action was brought to recover on the bond · for loss sustained by plaintiff through the acts of the employee, Weekes, named in the bond. By stipulation of counsel a trial by jury was waived and the cause referred to Loy J. Molumby, as referee, to hear the evidence and report to the court his findings of fact. The referee made and filed findings of fact in favor of plaintiff; judgment was entered thereon, and defendant appeals.

It appears from the pleadings and the evidence that for several years prior to June 12, 1923, Weekes was employed by plaintiff, first as secretary, and later as secretary and treasurer. In his capacity as such officer he had general supervision of its business, collected money due it, and disbursed moneys due others from it, and had general supervision and control of the books and accounts of the company. On June

9, 1921, plaintiff made and entered into a contract with Weekes, under the terms of which the latter was engaged to sell all unsold treasury stock of plaintiff. It was provided: "The said stock shall be sold at the rate of one hundred twenty-five dollars per share, and party of the second part [Weekes] shall be entitled to a commission on the sale of such stock, on the basis of 20% of the par value of such stock, payment to be made only when the cash for any such sales has been actually paid in. The commission to be paid only on the amount of cash paid into the treasury from each single transaction." This agreement remained in force during the period covered by the bond and its extension.

Between June 10, 1923, and March 3, 1925, Weekes sold a large amount of capital stock of plaintiff, taking the purchasers' notes. Entries of such sales were made in the books, and against each sale entries were made showing him entitled to commissions. Weekes then withdrew, on checks of plaintiff, the moneys shown by the books to be due as commissions, and converted the same to his own use. The total amount so taken and converted exceeded the sum of $29,000. The evidence tends to show that the sales were fictitious and the notes forgeries. The officers and directors of plaintiff corporation had no knowledge or information that Weekes was charging and collecting commissions on such sales until shortly before his discharge in April, 1925.

It is contended by defendant that the act or acts of Weekes did not amount to larceny or embezzlement.

"The universal rule is that in construing the bond of a surety company, acting for compensation, the contract is construed most strongly against the surety, and in favor of the indemnity which the obligee has reasonable grounds to expect. Such contracts are generally regarded as contracts of insurance, and are construed most strictly against the surety. (Note to the case of *Royal Indemnity Co.* v. *Northern Granite & S. Co.*, 12 A. L. R. 382; 21 R. C. L., p. 1160.)" (*State* v. *American Surety Co.*, 78 Mont. 504, 255 Pac. 1063.) And it

is not necessary, in order for plaintiff to recover on the bond, that it introduce such proof as would convict Weekes of the crime of larceny or embezzlement, as defined in the criminal law. (*Green* v. *United States F. & G. Co.*, 135 Tenn. 117, 185 S. W. 726; *Goldman* v. *Fidelity & Deposit Co.*, 125 Wis. 390, 104 N. W. 80; *National Surety Co.* v. *Williams*, 74 Fla. 446, 77 South. 212; *Delaware State Bank* v. *Colton*, 102 Kan. 365, 170 Pac. 992; *City Trust Co.* v. *Lee*, 204 Ill. 69, 68 N. E. 485; 25 C. J. 1094; 6 Cooley's Briefs on Insurance, 5654.) The parties were not contracting on the basis of an enforcement of the criminal laws; if only indemnity for losses suffered by reason of technical larceny or embezzlement had been intended, that purpose could have been expressed clearly and in no uncertain terms. (*Delaware State Bank* v. *Colton,* supra; *Dubiske & Co.* v. *American Surety Co.,* 220 App. Div. 524, 221 N. Y. Supp. 619; *Dexter-Horton Bank* v. *United States F. & G. Co.,* 149 Wash. 343, 270 Pac. 799.)

Section 11368, Revised Codes 1921, provides: "Every person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person either—1. Takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing, or secretes, withholds, or appropriates to his own use, or that of any other person other than the true owner, any money, * * * or, 2. * * * is guilty of larceny." The scheme devised and used by Weekes was clearly fraudulent, and by means thereof he obtained from plaintiff its money, and appropriated the same to his own use. Under the terms of the bond, defendant undertook to reimburse plaintiff for any pecuniary loss which it might sustain by reason of acts of Weekes, in connection with the duties and obligations of his position, amounting to larceny or embezzlement. In fraudulently obtaining plaintiff's money and appropriating the same to his own use, he violated his duty to plaintiff, which amounted to "larceny or embezzle-

ment" within the meaning of section 11368, supra, and his act or acts constituted a manifest breach of defendant's bond.

But it argued that the books of account disclosed the transactions; that the officers of plaintiff were chargeable with knowledge of the contents of the books of the company; and that the officers and directors will be deemed to have acquiesced in, and approved, the conduct of Weekes. There is not any evidence to justify such a conclusion. While it is true the books of account did show the various transactions, it is also true that Weekes had manipulated the accounts in such a manner that for a long period of time even a certified public accountant was not able to discover the shortage, and the officers testified that they would not have been able to discover the true condition by an examination of the books, and that they had no knowledge of the conditions.

It is next contended that the bond and its renewal constituted separate and distinct contracts for the period covered by each. This question is not necessary to be passed upon. The uncontradicted evidence shows that, during the period covered by each of the instruments, Weekes misappropriated amounts in excess of the penal sum named in the bond.

Counsel for defendant contend that the requisite notice was not given by plaintiff to defendant, and the itemized claim of loss was not filed within the time provided in the bond.

The bond provides that the employer shall at the earliest practicable moment, and not more than five days after becoming aware of any act or omission which may become the basis of a claim, notify the home office, and within three months after such discovery file with the home office an itemized statement of the claim sworn to by the employer. Such a condition in a bond is a condition precedent, and failure to comply therewith will bar recovery under the bond, unless the condition has been waived by the company. (*La Bonte* v. *Mutual Fire Ins. Co.*, 75 Mont. 1, 241 Pac. 631; *Careve* v. *Phoenix Ins. Co.*, 67 Mont. 236, 215 Pac. 235; *Tuttle* v. *Pacific Mut. Life Ins. Co.*, 58 Mont. 121, 16 A. L. R. 601, 190 Pac. 993.) That

the insurer may waive this condition is settled beyond question in this jurisdiction. (*La Bonte* v. *Mutual Fire Ins. Co.,* supra.) Counsel concede this to be the rule in this state, but insist that plaintiff failed to plead waiver. With this we cannot agree.

Section 8145, Revised Codes of 1921, provides: "Delay in the presentation to an insurer of notice or proof of loss is waived, * * * if he omits to make objection promptly and specifically upon that ground." The complaint alleges that plaintiff notified defendant within five days after discovering Weekes' defalcations, and within three months thereafter filed an itemized statement of claim and proof of loss, sworn to by plaintiff, and "that said defendant has at no time made objection to said claim or the sufficiency thereof, nor demanded further proof, and has at all times, since on or about the said 3rd day of July, 1925, retained said claim without objection or exception thereto." We think these allegations are sufficient. (*Miglier* v. *Phoenix Ins. Co.,* 102 Misc. Rep. 461, 169 N. Y. Supp. 45; *Glazer* v. *Home Ins. Co.,* 190 N. Y. 6, 82 N. E. 727; *Bank* v. *Home Ins. Co.,* 14 Cal. App. 208, 111 Pac. 507.) It has been held that a delay in furnishing proofs as well as any other defect may be waived by the failure of the insurer to object. (*Ames* v. *Minneapolis Fire & Marine Ins. Co.,* 69 Mont. 177, 220 Pac. 747; *Ramsey* v. *General Accident Ins. Co.,* 160 Mo. App. 236, 142 S. W. 763; *St. Paul Fire & Marine Ins. Co.* v. *Griffin,* 33 Okl. 178, 124 Pac. 300; *Breeden* v. *Aetna Life Ins. Co.,* 23 S. D. 417, 122 N. W. 348; 7 Cooley's Briefs on Insurance, 6052, and cases cited.)

Upon the trial the proof disclosed that on April 28, 1925, plaintiff wrote defendant as follows: " * * * We are not able to say as to whether or not there is any act or omission on his [Weekes'] part which may be made the basis of a claim against your company under this bond. * * * We shall, however, advise you as quickly as we are in a position to give you a definite notice or statement and our purpose at this time is merely to advise you as to the possibility of a demand

in the event that further investigation should disclose shortage or other liability on the part of Mr. Weekes.'' Shortly thereafter D. A. Crichton, state agent for defendant, and Mr. Kotz, its attorney, called at plaintiff's office, and requested permission to examine the books; the privilege was accorded Mr. Kotz. On June 5 two letters were written defendant relative to the matter and its liability under the bond; in reply to these letters, defendant stated that Crichton had been requested to investigate. On July 3 proof of loss and itemized statement were forwarded to the home office of defendant. This action was filed October 10, 1925.

We think it clear from the evidence that, after the receipt of plaintiff's proof of loss, defendant was fully advised of all the circumstances surrounding the loss. At no time, either by answer or otherwise, did defendant object upon the ground that notice had not been given or that the itemized claim had not been filed within the time required by the terms of the bond. Defendant did not defend upon this ground, but upon the theory that the act of Weekes did not amount to larceny or embezzlement. We are of the opinion that the objection now made comes too late, and that the evidence is sufficient to prove waiver.

It is next contended that plaintiff settled with Weekes for the purported loss without the written consent of defendant, thereby releasing it from liability under the bond.

The bond contains this provision: ''Nor shall  *  *  *  any settlement for loss hereunder be made without the written consent of the surety.'' When Weekes' acts became known to the officers and directors of plaintiff he deeded to it a residence and summer home; both properties were heavily encumbered; the sum of $500 was realized from these places; $250 of this amount was applied upon an indebtedness owing by Weekes to plaintiff on the purchase price of an automobile, and the balance credited upon his shortage. It is clear that this property was not accepted as a payment or satisfaction of Weekes' liability to plaintiff. Plaintiff did not agree to release him or

condone his offense. What was done did not have the effect of depriving the defendant of any right of subrogation upon paying the amount of the bond. The quoted provision had the effect of forbidding plaintiff, without the written consent of defendant, to enter into any transaction with Weekes having the effect of a settlement, involving a release or discharge with the result of impairing the right of defendant to proceed against him and enforce the liability which he had incurred. The result of what was done was a mere payment on the shortage, and was not a settlement within the meaning of the bond. (*Remington* v. *Fidelity & Deposit Co.*, 27 Wash. 429, 67 Pac. 989; *Perpetual Building & Loan Assn.* v. *United States F. & G. Co.*, 118 Iowa, 729, 92 N. W. 686; *Prosser Power Co.* v. *United States F. & G. Co.*, 73 Wash. 304, 132 Pac. 48; *Bank of Waterproof* v. *Fidelity & Deposit Co.* (C. C.), 297 Fed. 217; 21 R. C. L. 1000.)

Weekes also executed his note payable to plaintiff, and delivered the same to its secretary, for the sum of $29,691.17, in acknowledgment of his defalcation to that extent. No part of the note has been paid. The rule applicable is that, in the absence of an agreement, express or implied, between the parties, that it is to be received as payment, a note of a debtor, given for his precedent debt, is not payment of the original demand. (30 Cyc. 1194; 20 Cal. Jur. 920; *A. Leschen & Sons Rope Co.* v. *Mayflower Gold & M. Co.*, 173 Fed. 855, 35 L. R. A. (n. s.) 1, 97 C. C. A. 465; *Murray City* v. *Banks*, 62 Utah, 296, 219 Pac. 246; *Prosser Power Co.* v. *United States F. & G. Co.*, supra; *Standard Electric Time Co.* v. *Fidelity & Deposit Co.*, 191 N. C. 653, 132 S. E. 808; *United States F. & G. Co.* v. *Eichel*, 219 Fed. 803.) The evidence shows that the note was taken merely as an acknowledgment of the amount of Weekes' shortage, and not as payment.

It is next contended that plaintiff is precluded from recovery because of false and fraudulent statements contained in the "Employer's Statements" furnished by it before the execution and delivery of the bond.

On June 20, 1921, Weekes, as secretary of plaintiff company, procured from defendant a bond for $5,000, similar in its provisions to the bond before us. Before its execution and delivery, defendant required plaintiff to furnish, upon blanks prepared by defendant, an "Employer's Statement," which contained this provision: "And shall constitute the basis, and form a part of said bond applied for, and any other bond that may be executed by the Federal Surety Company to the undersigned upon the applicant in said position or any similar position, or any renewal or continuation of such bond or bonds." Like statements were required to be furnished by plaintiff upon the renewal or extension of that bond, and before the delivery of the bond and renewal in suit. No reference is made in the bond to the application or to the "Employer's Statements" furnished by plaintiff, and they are not expressly made a part of it. Counsel for defendant insist that the statements made by plaintiff are warranties and conditions precedent, and must be literally fulfilled to entitle plaintiff to recover.

Section 8123, Revised Codes of 1921, reads: "Every express warranty, made at or before the execution of the policy, must be contained in the policy itself, or in another instrument signed by the insured and referred to in the policy, as making a part of it." The provisions of this statute are applicable to the bond under consideration. (25 C. J. 1108, and cases cited.) Manifestly, under this section, the representations contained in the "Employer's Statements," not being referred to or made a part of the bond, were not warranties. "The general rule is that a warranty must be a part and parcel of the contract— made so by express agreement of the parties upon the face of the policy, * * * " while "a representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it." (*Pelican* v. *Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778; *Alabama Gold Life Ins. Co.* v. *Johnston*, 80 Ala. 467, 59 Am. Rep. 816, 2 South. 125;

14 Cal. Jur. 489.) Clearly, the statements made by plaintiff in the "Employer's Statements" furnished defendant were representations and not warranties.

But counsel argue that the provision of the bond that "all representations made by the employer to surety, relative to the employee in connection with this bond or any continuation thereof, are represented by the employer to be true," brings defendant within the provisions of section 8123. We think not. A general reference to the statements and representations as a whole will not incorporate them into the bond so as to make them warranties. The reference must be specific. (3 Cooley's Briefs on Insurance, 1875; 2 Id. 1071; 3 Joyce on Insurance, sec. 1891.)

The distinction between warranties and representations arises from the different effect given to the statements. "A warranty is the statement of a fact on the literal truth of which the validity of the contract depends; but in the case of a representation the validity of the policy does not depend on the literal truth of the assertion. In other words, a warranty must be literally true, while a representation need be only substantially true." (3 Cooley's Briefs on Insurance, 1866; *Pelican* v. *Mutual Life Ins. Co.*, supra; 3 Joyce on Insurance, sec. 1924.)

It is a well-established rule that, to avoid a policy on the ground that there has been a misrepresentation, the statement must not only be untrue as of the time when it was made, but also material as regards the acceptance of the risk assumed by the insurer. (4 Cooley's Briefs on Insurance, 3039, and cases cited.) And the rule seems equally well settled that, to avoid a policy for misrepresentations, the false statements must have been made wilfully and with intent to deceive, and must have been relied upon by the insurer. (*Pelican* v. *Mutual Life Ins. Co.*, supra; 4 Cooley's Briefs on Insurance, 3048, and cases cited.)

We need not express an opinion as to whether or not the representations made by plaintiff prior to the "Employer's

Statement'' of June 13, 1923, were false as to material facts, since it does not appear that any of the representations made were relied upon by defendant when it executed and delivered the bond under consideration or the renewal thereof. Defendant's agent, who countersigned the bond on behalf of defendant and the renewal certificate, testified that the bond was executed upon the representations contained in the statement of June 13, 1923. As to this statement but few of the ▆▆ printed questions were answered by plaintiff. In executing the bond without further inquiry, defendant waived the want of answer to the printed questions, and thus rendered the omission to answer immaterial. (*Phoenix Mut. Life Ins. Co.* v. *Raddin,* 120 U. S. 183, 30 L. Ed. 644, 7 Sup. Ct. Rep. 500.) The agent further testified that the renewal certificate was executed upon the representations made by plaintiff on June 10, 1924. From a careful examination of the entire record, we think the representations contained in these statements were made in good faith and were substantially true. Defendant's contention cannot be sustained.

Complaint is made that the referee heard incompetent evidence. Where an action at law is tried by the court sitting without a jury, the admission of incompetent evidence will not bring about a reversal; the presumption is that the court in making its order considered only the competent evidence before it. (*Atkinson* v. *Roosevelt County,* 71 Mont. 165, 227 Pac. 811; *State ex rel. Rankin* v. *Martin,* 68 Mont. 392, 219 Pac. 632; *State* v. *Driscoll,* 49 Mont. 558, 144 Pac. 153.) There is ample competent evidence to support the referee's findings and the judgment rendered thereon, and we think it apparent that defendant was not prejudiced by the erroneous admission of any testimony.

Counsel predicate error upon the referee's finding that Weekes' embezzlements continued until April 12, 1925, and insist that plaintiff had knowledge of his acts on March 3. The bond provides: ''The obligation of this bond shall terminate: (a) Upon discovery of loss hereunder.'' We think

the question is of no importance, since the evidence discloses that the last act of larceny was committed by Weekes on January 31, 1925. The finding, if erroneous, was not prejudicial.

Finding no reversible error, the judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Angstman concur.