**SENTINEL LIFE INS. CO. v. BLACKMER.\***

No. 1156.

Circuit Court of Appeals, Tenth Circuit.

May 3, 1935.

\*Rehearing denied June 6, 1935.

S. Harrison White, of Denver, Colo. (Charles M. Howell and William H. Allen, both of Kansas City, Mo., on the brief), for appellant.

Walter W. Blood, of Denver, Colo. (G. C. Bartels, of Denver, Colo., and Addison M. Gooding, of Steamboat Springs, Colo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On October 13, 1931, the Insurance Company issued a policy of accident insurance to Dr. Frank J. Blackmer. He died on December 2, 1931, while the policy was in force and effect. Eda E. Blackmer, the beneficiary named in the policy, brought this action to recover the death benefit provided for therein.

The cause was tried to the court without a jury upon stipulation of the parties.

The material provisions of the policy are these:

"The Sentinel Life Insurance Company, Kansas City, Missouri * * * In Consideration of a first premium of $32.50 and policy fee $5.00 and of the statements in application for this policy, copy of which is endorsed hereon or attached hereto and made a part hereof, and subject to all the provisions and limitations hereinafter contained and endorsed hereon or attached hereto,

"Does Hereby Insure Dr. Frank J. Blackmer (Hereinafter Called the Insured), in the Principal sum of Five Thousand Dollars * * *.

"Against the losses and disabilities hereinafter defined, resulting from accidental bodily injuries, fatal or non-fatal, which injuries are sustained during the term of this policy. * * *

"Specific Losses.

"Loss of Life, The Principal Sum * * *

"This Contract Shall be Deemed to be Made and Payable in the State of Colorado. * * *

"Part B. Accumulative Benefits.

"If the premium is paid annually in advance, each consecutive full year's renewal of this Policy shall add 10 Per Cent to the Principal Sum of the first year until such additions shall amount to 50 Per Cent. * * *

"Endorsement.

"It is understood and agreed that the full 50 per cent Principal Sum accumulated benefits, provided by Part B of the policy of which this endorsement is a part, shall be in effect for one year from date policy is issued; * * *

"Application for Accident or Disability Insurance * * *

"I hereby apply for insurance in the Sentinel Life Insurance Company and for that purpose make the following statements: * * *

"14. (a) Are you sound physically and mentally? Yes. * * *

"15. Have you now any ailment, disease or disorder, or have you consulted a physician for any cause in the past 10 years? None. * * *

"24. Are the Answers to the Questions in This Application Your Own Answers and do you understand and agree that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event that any one of the foregoing statements, material either to the acceptance of the risk or the hazard assumed by the Company, is *false or made with intent to deceive;* * * *

"Dated at Kansas City this 7 day of Oct., 1931."
(Italics ours.)

The issues presented by the pleadings were these: 1. Did the insured incur a rupture or perforation of a duodenal ulcer on November 25, 1931, and if so, was it an accidental injury? 2. Was his death on December 2, 1931, the result thereof? 3. Was he unsound physically on October 7, 1931, in that he then had a duodenal ulcer? 4. If he had such ulcer on October 7, 1931, did he know or have reason to believe he was so afflicted? 5. Had he consulted any physician in the ten years prior to October 7, 1931, for duodenal ulcer?

The court made a general finding in favor of the plaintiff and gave judgment accordingly.

The evidence, viewed in a light most favorable to plaintiff, established these facts. On November 25, 1931, the insured emptied a 50-pound sack of flour into a bin about five feet high. Shortly thereafter he was seized with very severe pains in the upper abdomen which prostrated him. Insured was removed to the hospital at Steamboat Springs, Colorado, and attended by Doctors Willett and Sloan, who decided that an abdominal operation was necessary.

Dr. Willett performed the operation and Dr. Sloan assisted. Upon opening the abdominal cavity, they found a ruptured duodenal ulcer, and performed a gastroenterostomy. There was considerable serous exudate from the stomach that had escaped through the perforation into the abdominal cavity. An operation was absolutely necessary, and a gastroenterostomy was the proper operation. During three or four days following the operation insured made good progress toward recovery. On November 30 he developed postoperative pneumonia from which he died on December 2, 1931. The shock of the operation and the anaesthetic lowered insured's vitality and caused him to contract pneumonia. The higher the point of the operation in the abdominal cavity, the greater is the probability of postoperative pneumonia. While pneumonia was the terminal cause of insured's death, the perforated ulcer set in motion and was the proximate cause of a natural sequence of events that resulted in insured's death, namely, the operation with its attendant shock, reduced vitality, and postoperative lobular pneumonia.

Insured was not aware that he was suffering from an ulcer at the time he made the application for the policy of insurance, and the statement in his application that he was physically and mentally sound, if untrue, was made by him in good faith and without knowledge that it was not true.

Insured had not consulted a physician concerning a duodenal ulcer within ten years prior to the date of the application.

■ Policies of accident insurance may be divided generally into two classes: (1) those that insure against accidental result, and (2) those that insure against the result of an accidental cause. There is a well recognized distinction between these two classes. To come within the coverage of the second class, the means or cause must be accidental, while to come within the coverage of the first class it is sufficient if the result or effect is accidental.[1]

[1] In Landress v. Phœnix Ins. Co., 291 U. S. 491, 497, 54 S. Ct. 461, 463, 78 L. Ed. 934, 90 A. L. R. 1382, the court said:

"This distinction between accidental external means and accidental result has been generally recognized and applied where the stipulated liability is for injury resulting from an accidental external means. See Ætna Life Ins. Co. v. Brand (C. C. A.) 265 F. 6, 13 A. L. R. 657; Lincoln National Ins. Co. v. Erickson (C. C. A.) 42 F.(2d) 997; Jensma v. Sun Life Assur. Co. [(C. C. A.) 64 F.(2d) 457] supra; Order of United Commercial Travelers v. Shane (C. C. A.) 64 F.(2d) 55."

In Maryland Casualty Co. v. Massey (C. C. A. 6) 38 F.(2d) 724, 725, 71 A. L. R. 1428, the court said:

"There is substantial distinction between 'accidental injuries' and injuries effected through 'accidental means,' or as it

■ The policy in the instant case insures against accidental result. Delaney v. Modern Acc. Club, 121 Iowa, 528, 97 N. W. 91, 63 L. R. A. 603; North American Life & Acc. I. Co. v. Burroughs, 69 Pa. 43, 8 Am. Rep. 212.

Webster's New International Dictionary defines "accident" as follows: "An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." It defines "accidental" as "happening by chance, or unexpectedly; taking place not according to the usual course of things."

In United States Mut. Acc. Ass'n v. Barry, 131 U. S. 100, 121, 9 S. Ct. 755, 759, 33 L. Ed. 60, the court defines "accidental" as follows: " 'Happening by chance; unexpectedly taking place; not according to the usual course of things;' or not as expected." See also Continental Cas. Co. v. Willis (C. C. A. 4) 28 F.(2d) 707, 709, 61 A. L. R. 1069.

Here the rupture or perforation of the stomach wall at the point of the ulcer was an event that took place unexpectedly and not according to the usual course of things. It was clearly an accidental result. It set in motion and was the natural and proximate cause of a sequence of events that resulted in insured's death, namely, the operation, reduced vitality, and postoperative lobular pneumonia.

■ We conclude that insured's death resulted from an accidental injury, and was within the coverage of the policy.

■ A warranty in the law of insurance is a statement or stipulation in the policy which is breached unless absolutely true or literally fulfilled, and the breach of which results in the avoidance of the insurer's liability upon the policy. Capital Fire Ins. Co. v. King, 82 Ark. 400, 102 S. W. 194, 195; 2 Joyce on Insurance, § 1970; Union Nat. Bank of New Orleans v. Manhattan Ins. Co., 52 La. Ann. 36, 26 So. 800, 806; Shamrock Towing Co. v. American Ins. Co. (C. C. A. 2) 9 F.(2d) 57, 58.

A warranty may be either affirmative or promissory. The former affirms the existence of a fact at the time the policy is entered into; the latter requires that something be done or not done after the policy has taken effect. Orient Ins. Co. v. Van Zandt-Bruce Drug Co., 50 Okl. 558, 151 P. 323, 324; Rosenthal Cloth. & Dry Goods Co. v. Scottish Union & Nat. Ins. Co., 55 W. Va. 238, 46 S. E. 1021.

■ A breach of warranty does not prevent a contract from taking effect, but avoids the insurer's liability thereunder. Hurt v. New York Life I. Co. (C. C. A. 10) 53 F.(2d) 453, 454; Everson v. General F. & L. Assur. Corp., 202 Mass. 169, 88 N. E. 658; Chambers v. Northwestern Mut. L. Co., 64 Minn. 495, 67 N. W. 367, 368, 58 Am. St. Rep. 549.

■ A representation is an oral or written statement of a fact or a condition affecting the risk, made by the insured to the insurer, and which precedes and is not a part of the contract, unless it is expressly stipulated that it shall be. Ætna Life Ins. Co. v. McCullagh, 185 Ky. 664, 215 S. W. 821, 823; Maryland Casualty Co. v. First State Bank of Dewar, 101 Okl. 71, 223 P. 701, 703; Cooley's Briefs on Insurance (2d Ed.) vol. 3, p. 1865; Id., vol. 4, p. 3005.

■ Unless it clearly appears that the parties intended statements made by an insured in his answers to questions in the application for insurance to be warranties, they will be construed to be representations. Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183, 189, 7 S. Ct. 500, 30 L. Ed. 644; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 557, 558, 34 S. Ct. 186, 58 L. Ed. 356; Fi-

---

was put in a recent decision by this court (Pope v. Prudential Insurance Co. [C. C. A.] 29 F.(2d) 185), between accidental result and the result of an accidental cause."

In Continental Cas. Co. v. Willis (C. C. A. 4) 28 F.(2d) 707, 708, 61 A. L. R. 1069, the court said:

"The elaborate argument of appellant's counsel is based on what we conceive to be a false premise, that is, that the language in the policy, 'personal bodily injury which is effected * * * by the happening of an external, violent and purely accidental event,' has exactly the same significance as the standard expression, 'bodily injury effected by violent, external and accidental means.' Surely 'accidental event' does not have, nor can it possibly have, the same significance or meaning as 'accidental means.' An event is the culmination or end that the 'means' may have produced or brought about. There is the same relationship between means and the event that results, that there is between cause and effect. The means may not have been in any way accidental, yet the event because of some unknown and unknowable factor highly accidental."

delity Mut. Life Ass'n v. JefPords (C. C. A. 5) 107 F. 402, 408, 53 L. R. A. 193.

■ A misrepresentation will not constitute a defense to an action on a policy of insurance unless it was intentionally untrue or was made with a reckless disregard for its truth or falsity.[2]

The questions and answers in the application are designated in the policy as "statements." The policy says that the insurance contract is made "in consideration of a first premium of $32.50 and policy fee of $5.00 and of the *statements* in application for this policy." The application reads: "I hereby apply for insurance in the Sentinel Life Insurance Company and for that purpose make the following *statements*." Then follow the questions and answers. Following those is the agreement: "That the right to recovery * * * shall be barred in the event that any one of the foregoing *statements,* material either to the acceptance of the risk or the hazard assumed by the company is *false, or made with intent to deceive.*" (Italics ours.)

■ It is well settled in the national courts that contracts of insurance should be construed according to the sense and meaning of the terms the parties have used, that those terms ought to be given their plain, ordinary and popular meaning, and that it is only where, because of ambiguity in the language employed, the contract is fairly susceptible of two interpretations—one favorable to the insured and the other favorable to the insurer—that the rule of liberal construction in favor of the insured may be applied. Chase v. Business Men's Assur. Co. of America (C. C. A. 10) 51 F.(2d) 34, 35, and cases there cited; East & West Ins. Co. of New Haven, Conn., v. Fidel (C. C. A. 10) 49 F.(2d) 35, 38.

■ But if the language of the policy is reasonably open to two constructions, the one more favorable to the insured will be adopted. Aschenbrenner v. U. S. F. & G. Co., 292 U. S. 80, 85, 54 S. Ct. 590, 78 L. Ed. 1137; Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895; Mutual Life Ins. Co. v. Hurni Pack. Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Norwich Union Fire Ins. Soc., Ltd., of Norwich v. Cohn (C. C. A. 10) 68 F.(2d) 42, 94 A. L. R. 494; Sanderson v. Postal Life Ins. Co. of N. Y. (C. C. A. 10) 72 F.(2d) 894, 898; Southern Surety Co. v. MacMillan Co. (C. C. A. 10) 58 F.(2d) 541.

Webster's New International Dictionary defines "false" as follows:

"3. Not according with truth or reality; not true; erroneous; as, a *false* statement.

"4. Not genuine or real; assumed or designed to deceive; intentionally or wilfully untrue; counterfeit; artificial; hypocritical; sham; feigned; as *false* tears; *false* modesty; *false* colors; *false* jewelry; a *false* check or entry; *false* teeth; *false* gods;—in this sense often distinguished from *erroneous* or *mistaken.*"

Thus it will be seen that "false" is a word of double meaning.

In Moulor v. American Life Ins. Co., 111 U. S. 335, 345, 4 S. Ct. 466, 471, 28 L. Ed. 447, the court said:

"In one sense, that only is true which is conformable to the actual state of things. In that sense, a statement is untrue which does not express things exactly as they are. But in another and broader sense the word 'true' is often used as a synonym of honest, sincere, not fraudulent."

[2] Security Life Ins. Co. of America v. Brimmer (C. C. A. 8) 36 F.(2d) 176, 179; Wharton v. Ætna Life Ins. Co. (C. C. A. 8) 48 F.(2d) 37, 42; Nonantum Inv. Co. v. Maryland Casualty Co. (C. C. A. 1) 56 F.(2d) 329, 334; Bankers' Reserve Life Co. v. Matthews (C. C. A. 8) 39 F.(2d) 528, 537; Northwestern Mut. Life Ins. Co. v. West, 62 App. D. C. 381, 68 F.(2d) 428, 430; Rice v. Fidelity & Deposit Co. of Md. (C. C. A. 8) 103 F. 427, 430; Montana Auto Finance Corp. v. Federal Surety Co., 85 Mont. 149, 278 P. 116, 121; Walker v. Fireman's Fund Ins. Co., 114 Or. 545, 234 P. 542, 547; Cooley's Briefs on Insurance (2d Ed.) vol. 3, p. 1901;

Northwestern Mut. L. I. Co. v. Farnsworth, 60 Colo. 324, 153 P. 699; Southern Surety Co. v. Farrell, 79 Colo. 53, 244 P. 475, 476.

In the case last cited, the court said: "The company pleaded that plaintiff in his application falsely and knowingly stated his physical condition was sound when he had arteriosclerosis; that the policy was issued in reliance upon that representation. The representation does not appear to be a warranty, and the plaintiff is not shown to have known of this condition. The representation, therefore, if false, was without consequence."

It follows that "false" should be construed to mean intentionally or wilfully untrue.[3]

There was substantial evidence supporting the finding of the court that if the insured had a duodenal ulcer on October 7, 1931, the date he made application for the insurance, he did not know or have reason to believe he was so afflicted. His answer, not being intentionally or wilfully false, even if not literally true, constituted no defense to the policy.

The judgment is affirmed.

[3] In Moulor v. American Life Ins. Co., 111 U. S. 335, 340, 341, 343, 4 S. Ct. 466, 468, 28 L. Ed. 447, the court said:

"Assuming—as in view of the finding of the jury we must assume—that the insured was, at the date of his application, or had been prior thereto, afflicted with the disease of scrofula, asthma, or consumption, the question arises whether the beneficiary may not recover, unless it appears that he had knowledge, or some reason to believe, when he applied for insurance, that he was or had been afflicted with either of those diseases. The circuit court plainly proceeded upon the ground that his knowledge or belief as to having been afflicted with the diseases specified, or of some one of them, was not an essential element in the contract; in other words, if the assured ever had, in fact, any one of the diseases mentioned in his answer to the seventh question, there could be no recovery, although the jury should find from the evidence that he acted in perfect good faith, and had no reason to suspect, much less to believe or know, that he had ever been so afflicted. If, upon a reasonable interpretation, such was the contract, the duty of the court is to enforce it according to its terms; for the law does not forbid parties to a contract for life insurance to stipulate that its validity shall depend upon conditions or contingencies such as the court below decided were embodied in the policy in suit. * * * But, unless clearly demanded by the established rules governing the construction of written agreements, such an interpretation ought to be avoided. In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that a person took a life policy with the distinct understanding that it should be void, and all premiums paid thereon forfeited, if at any time in the past, however remote, he was, whether conscious of the fact or not, afflicted with some one of the diseases mentioned in the question to which he was required to make a categorical answer. If those who organize and control life insurance companies wish to exact from the applicant, as a condition precedent to a valid contract, a guaranty against the existence of diseases, of the presence of which in his system he has and can have no knowledge, and which even skillful physicians are often unable, after the most careful examination, to detect, the terms of the contract to that effect must be so clear as to exclude any other conclusion. * * *

"But it is contended that if the answers of the assured are to be deemed representations only, the policy was, nevertheless, forefeited, if those representations were untrue in respect of any matters material to the risk. The argument is that if the insured was, at the time of his application, or had been at any former period of his life, seriously or in an appreciable sense, afflicted with scrofula, asthma, or consumption, his answer, without qualification, that he had never been so afflicted, being untrue, avoided the policy, without reference to any knowledge or belief he had upon the subject. The soundness of this proposition could not be disputed if, as assumed, the knowledge or good faith of the insured, as to the existence of such diseases, was, under the terms of the contract in suit, of no consequence whatever in determining the liability of the company. But is that assumption authorized by a proper interpretation of the two instruments constituting the contract? We think not.

"Looking into the application, upon the faith of which the policy was issued and accepted, we find much justifying the conclusion that the company did not require the insured to do more, when applying for insurance, than observe the utmost good faith, and deal fairly and honestly with it, in respect of all material facts about which inquiry is made, and as to which he has or should be presumed to have knowledge or information."