TAX COURT OF NEW JERSEY



TAX COURT MANAGEMENT OFFICE
(609) 815-2922

P.O. Box 972
TRENTON, NEW JERSEY 08625

# Corrected Opinion Notice

**Date: February 27, 2026**

**Michael Kurpiewski, Esq.**
280 Raritan Center Parkway
Edison, NJ 08837

**Wesley E. Buirkle, Esq.**
One Municipal Plaza
Freehold, NJ 07728

**From: Naglaa Elsayed     Telephone number:  (609)815-2922**

**Re:  MT Freehold BPE LLC v Township of Freehold; MT Freehold BPE Two, LLC v Township of Freehold**
**Docket number: 000052-2025; 000054-2025; 000056-2025; 000055-2025**

The attached corrected opinion replaces the version released on February 27, 2026   The Opinion has been corrected as noted below:

Corrected February 27, 2026-Page 1

Added Decided date February 27, 2026

NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____

|  |  |  |
|---|---|---|
| MT FREEHOLD BPE LLC, | : | TAX COURT OF NEW JERSEY |
|  | : |  |
| Plaintiff, | : | DOCKET NOS.   000052-2025 |
|  | : | 000054-2025 |
| v. | : | 000056-2025 |
|  | : |  |
| TOWNSHIP OF FREEHOLD, | : | Block 42, Lots 26.0123; 26.0126; 26.0128 |
|  | : |  |
| Defendant. | : | Civil Action |

_____:_____

|  |  |  |
|---|---|---|
| MT FREEHOLD BPE TWO LLC, | : | TAX COURT OF NEW JERSEY |
|  | : |  |
| Plaintiff, | : | DOCKET NO.     000055-2025 |
|  | : |  |
| v. | : | Block 42, Lot 26.0124 |
|  | : |  |
| TOWNSHIP OF FREEHOLD, | : | Civil Action |
|  | : |  |
| Defendant. | : |  |

_____:_____

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: February 27, 2026

Michael Kurpiewski, for plaintiffs
(Zipp & Tannenbaum, LLC, attorneys).

Wesley E. Buirkle, for defendant
(DiFrancesco Bateman, Kunzman, Davis, Lehrer & Flaum, PC,
attorneys).

SUNDAR, P.J.T.C.

This opinion decides defendant's motions to dismiss the above-captioned complaints. The motions contend that plaintiffs' response to the defendant's

assessor's request for income information under N.J.S.A. 54:4-34 (commonly referred to as "Chapter 91") for each of the above-captioned properties was false. The falsity, per defendant, was that plaintiffs reported their monthly gross base rental income instead of their requested annual gross base rental income. This, defendant argues, not only severely underreported each property's potential gross income, but also undercut the purpose and intent of Chapter 91, which is to assist an assessor in setting the assessment for a property.

Plaintiffs opposed the motion contending that they provided a true and full account of each property's gross base rental income, and in any event, the error in providing a monthly amount was a simple mistake, therefore, the responses were not false.

For the reasons stated below, the court finds that the word "false" under Chapter 91 should be interpreted as a deliberate intent to falsify or misreport information, i.e., with knowledge of the same. Based on the evidence, the court finds that plaintiffs made an unknowing, inadvertent mistake when one of their owners, who completed and electronically sent the Chapter 91 responses, inputted the full and true monthly income instead of inputting that amount multiplied by twelve, i.e., the annual amount. Such a mistake does not render their report of the gross base

rental income generated by each property as false under Chapter 91. The court therefore denies defendant's motions to dismiss the complaints.[1]

**FACTS**

Plaintiffs own the above-captioned properties (collectively the "subject properties") which are in Freehold, the defendant herein ("Township"). The subject properties are leased to unrelated entities.

In 2024, the Township's assessor sent by certified mail a Chapter 91 request as to the subject properties, seeking their annual income and expense information for purposes of setting their local property assessments for tax year 2025. Attached to the requests were statements with schedules. The first page following the requests were titled "Annual Statement of Income and Expenses," and identified the "period" for which information was being sought as the "annual period beginning January 01, 2023 and ending on December 31, 2023."

---

[1] Defendant filed identical motions in all four cases, with certifications in support of the same. Plaintiffs likewise filed identical oppositions and a certification of Andrew Breiner, one of plaintiffs' owners, in support of the same in all four cases. At the court's direction that should it require testimony, each party must have a fact witness present during oral argument of the motions, plaintiffs proffered testimony from Mr. Breiner (hereinafter "plaintiffs' owner") and defendant proffered testimony from its assessor.

The court will therefore issue one opinion as to the four matters referencing the plaintiffs collectively since the relevant facts are the same (except for the slightly differing reported gross base rental income on the respective Chapter 91 responses), as is the legal issue.

After receipt of the Chapter 91 requests, plaintiffs' owner sought guidance from the Township's tax assessor's office (and the tax collector) on how best to respond to the same. The assessor directed him to the Monmouth County Board of Taxation's web portal. Plaintiffs' owner then used the portal to complete each Chapter 91 request, submitted the same electronically, and received an electronic confirmation of the submission.

While the formatting of the hard-copy Chapter 91 requests is different from their web-version, it is undisputed that (i) the statements accompanying the requests were titled the same, i.e., "Annual Statement of Income and Expenses," and (ii) the periods for which the information was sought were the same, i.e., "annual period beginning January 01, 2023 and ending on December 31, 2023." Part 4, Schedule A of the statements were each also identically titled "Statement of Itemized Income for <u>Non-Residential</u> Units," (emphasis in original), and contained the same 13 columns and information sought therein. As with the paper forms, the web-based forms contained detailed instructions on completing, reviewing, printing, and submitting the responses.

At issue here is the information electronically inputted by plaintiffs' owner regarding the gross base rental income derived from the subject properties. Column 9 of the web-based Schedule A is titled "Gross POSSIBLE Annual Base Rent." Based on the inputted amount, the software calculates the rent per square foot

("PSF") and populates it in Column 8 titled "POSSIBLE Base Rental Per Square Foot," by dividing the inputted rent by the total rented space (inputted in Column 7 titled "Square feet of Rental Space").

Plaintiffs' owner inputted the correct square foot ("SF") area in Column 7 and the correct *monthly* (as opposed to annual) gross rental amount in Column 9 for each property. The system then calculated the PSF rent (inputted rent ÷ inputted SF). The inputted information, and the computer-generated PSF for the subject properties were thus:

Block 42, Lot 26.0123 (300 Business Park Drive) (single tenant)

| Inputted Area | Inputted Rent | Web Computed PSF |
|---|---|---|
| 13,750 SF | $10,942 | $0.8 |

Block 42, Lot 26.0124 (400 Business Park Drive) (three tenants)[2]

| Inputted Area | Inputted Rent | Web Computed PSF |
|---|---|---|
| 12,500 SF | $11,145 | $0.8; $0.81; $1.41 |

Block 42, Lot 26.0126 (600 Business Park Drive) (single tenant)

| Inputted Area | Inputted Rent | Web Computed PSF |
|---|---|---|
| 14,400 SF | $14,297 | $0.99 |

Block 42, Lot 26.0128 (800 Business Park Drive) (single tenant)

| Inputted Area | Inputted Rent | Web Computed PSF |
|---|---|---|
| 23,760 SF | $18,124 | $0.76 |

Had the annual rental amount (monthly gross rent times 12) been input, the web-computed PSF would have been as follows:

---

[2] Plaintiffs' owner inputted information for three leases separately, including the name of each tenant, the leased area, the monthly base rent, escalation income, the total leased area, and total monthly rental income.

Block 42, Lot 26.0123 (300 Business Park Drive)

| Area | Annual Rent | PSF (rounded) |
|---|---|---|
| 13,750 SF | $131,304 ($10,942 x 12) | $9.55 ($131,304÷13,750 SF). |

Block 42, Lot 26.0124 (400 Business Park Drive)

| Area | Annual Rent | PSF (rounded) |
|---|---|---|
| 12,500 SF | $133,740 ($11,145 x 12) | $10.70 ($133,740÷12,500 SF) |

Block 42, Lot 26.0126 (600 Business Park Drive)

| Area | Annual Rent | PSF (rounded) |
|---|---|---|
| 14,400 SF | $171,564 ($14,297 x 12) | $11.90 ($171,564÷14,400 SF) |

Block 42, Lot 26.0128 (800 Business Park Drive)

| Area | Annual Rent | PSF |
|---|---|---|
| 23,760 SF | $217,488 ($18,124 x 12) | $9.15 ($217,124÷23,760 SF) |

It is undisputed that the monthly amounts which were inputted are correct and match the amounts in the leases provided to the Township during discovery. There is no dispute as to the accuracy of the reported rentable areas of the subject properties. Plaintiffs' owner also included all relevant information in the other columns (tenant name, lease period, escalation income, and the like), none of which is disputed or alleged to be false. Thus, the error was solely due to his inputting monthly gross base rents, instead of annual gross base rents, which then automatically created incorrect PSF amounts.

Plaintiffs' owner testified that he incorrectly inputted the monthly gross base rent in Column 9 for the subject properties, and that he did so inadvertently, with no intent to deceive the assessor in this regard, nor with any intent to misrepresent the subject properties' gross base rental income. He stated that he used the subject

6

properties' rent rolls to complete Part 4 of the Chapter 91 requests, which are internally maintained as monthly rents, not annual rents. For instance, he stated, if a month's rent is late or unpaid, it triggers red flags for operational issues (e.g., eviction possibilities). He confirmed that the internal rent rolls are not annualized, thus, when he inputted the income amount, he used the monthly number and failed to manually compute (i.e., multiply the same by 12) and input the annual amount. And since the portal automatically computes the PSF amount, he stated, he did not do anything further in this regard.

Plaintiffs' owner conceded that once he completed the forms, he did not verify the accuracy of the input information, by either reviewing the forms before their electronic submission, or by printing them for later review. He stated that had he done so, he would have spotted the web-based computation of the PSF as being unusually low, and he would have rectified it.

Plaintiffs' owner disputed the implication made in the Township's assessor's testimony that since plaintiffs are sophisticated property owners owning several commercial properties, the under-reporting of the base rental income (monthly versus annual) could not have been an innocent mistake. He credibly testified that he did not own multiple commercial properties (other than the subject properties), and that this was the first time that he filled out Chapter 91 requests electronically. He stated that it was only after litigation commenced (by plaintiffs having filed direct

7

appeals with this court challenging the local property tax assessments imposed on the subject properties),[3] after discovery responses were provided by plaintiffs (through counsel) to defendant (through counsel), and after the instant motions were filed, that he realized his mistake (i.e., that he had input a monthly instead of annual gross base rent). He further testified that for the subsequent tax year 2026, he ensured that he inputted the annual gross base rental income in response to the Chapter 91 requests for the subject properties, now also being more familiar with using the web-based Chapter 91 request platform.[4]

**ANALYSIS**

N.J.S.A. 54:4-34 requires the owner of an income-producing property to provide "a full and true account of his . . . real property and the income therefrom." If the owner fails or refuses to respond, or "render[s] a false or fraudulent account," then an assessor "shall value his property at such amount as he may, from any

---

[3]  The tax year 2025 assessment for each property was as follows:
Block 42, Lot 26.0123 (300 Business Park Drive) - $3,025,000
Block 42, Lot 26.0124 (400 Business Park Drive) - $2,750,000
Block 42, Lot 26.0126 (600 Business Park Drive) - $3,278,000
Block 42, Lot 26.0128 (800 Business Park Drive) - $5,227,200

[4] For each property, as it relates to tax year 2026, plaintiffs' owner inputted the gross possible *annual* base rent in Column 9 (based on the leases) as follows:
Block 42, Lot 26.0123 (300 Business Park Drive) - $131,304
Block 42, Lot 26.0124 (400 Business Park Drive) - $138,872
Block 42, Lot 26.0126 (600 Business Park Drive) - $182,020
Block 42, Lot 26.0128 (800 Business Park Drive) - $217,488

8

information in his possession or available to him, reasonably determine to be the full and fair value thereof." Ibid. Subject to the property owner's right to a reasonableness hearing under Ocean Pines, Ltd. v. Point Pleasant Borough, 112 N.J. 1 (1988), the property owner is barred from appealing the "assessor's valuation and assessment with respect to income-producing property where the owner" has failed/refused to respond or has "rendered a false or fraudulent account." N.J.S.A. 54:4-34.

The "purpose" of this law is "to assist the assessor in the first instance, to make the assessment." Ocean Pines, 112 N.J. at 7. The statute allows the assessor "access to fiscal information that can aid in valuing the property." SKG Realty Corp v. Wall Twp., 8 N.J. Tax 209, 211 (App. Div. 1985).

The Chapter 91 statute does not define the word "false" or "fraudulent." Nor are there any regulations in this regard.

The Township contends thus: intent is irrelevant in determining whether the response was false.[5] This is because the statute uses the terms "false or fraudulent" in the disjunctive, and since fraud requires intent, it must mean that "false" does not. Further, Lucent Technologies, Inc. v. Berkeley Heights Twp., 405 N.J. Super. 257 (App. Div. 2009), the only reported case on this issue, which is binding precedent,

---

[5] The Township does not argue that plaintiffs' owner's responses as to the subject properties' gross base rental income were fraudulent.

has ruled that intent is irrelevant in deciding whether a statement is false. Additionally, the statute requires a "true account" of income. Thus, when the assessor's Chapter 91 request asks for annual income, it means that a "full and true account" is each property's annual, not monthly, gross base rental income. Here, plaintiffs reported the monthly, not annual, gross base rental income, therefore their Chapter 91 responses were false under its literal or plain meaning. The significant difference in the amounts of monthly versus annual rental income, and monthly versus annual PSF rent, also demonstrates the falsity of the responses.

Plaintiffs' opposition of the Township's motion is twofold: (1) the Chapter 91 statute does not impose any requirement that income must be reported on an "annual" basis. The amount input by plaintiffs' owner was undisputedly a "full and true account" of each property's monthly gross base rental income. Therefore, the court does not need to, nor should it analyze, the "false or fraudulent" aspect of the statute; and (2) should the court decide to engage in such analysis, then inputting a monthly instead of an annual income was not a false statement because there was no intent to falsify information or to misrepresent/deceive the assessor.

Initially, the court notes that the Township incorrectly casts the Appellate Division's reported decision in <u>Lucent</u> as binding precedent on the interpretation of the term "false." That case was before the Appellate Division on an interlocutory appeal from the Tax Court's unpublished (bench) decision on the issue of whether a

10

Chapter 91 motion to dismiss a complaint on grounds of false or fraudulent response should be made within the time limits under R. 8:7(e). Lucent, 405 N.J. Super. at 258-59, 263.

After setting forth the factual and procedural background, the Appellate Division summarized the Tax Court's bench findings. Id. at 261. Those findings were that the Chapter 91 responses of the property owner ("Lucent") had omitted or failed to disclose the existence of a leaseback transaction, thus were "deficient," regardless of the magnitude of the leased area.[6] Ibid. As to whether Lucent's responses were "false or fraudulent," the Tax Court "reasoned that whether a response is false or fraudulent does not require a finding of fraudulent intent." Ibid. While the Tax Court stated that "not every omission renders a Chapter 91 response false," the omissions in the case "were, in [the Tax Court's judge's] . . . view, significant." Thus, the Tax Court judge, the Appellate Division stated, was also "satisfied" that the Chapter 91 responses were "false or fraudulent." Id. at 261-62.[7]

---

[6] Lucent's Chapter 91 response was that the property was "owner-occupied" except for a small portion (about 5% of the premises) which was leased to a non-related entity. Lucent, 405 N.J. Super. at 260. During discovery, Lucent revealed that the property was leased to it by a related entity under a 20-year lease agreement, which specified that it was a "true lease for state law and tax purposes," and that Lucent had subsequently sub-leased portions of the property (totaling less than 5% of the entire property) to three non-related entities under sub-lease/license agreements. Id. at 259-60.

[7] The Appellate Division did not state why the Tax Court had deemed Lucent's omissions as significant.

None of these (unpublished) findings of the Tax Court, as summarized by the Appellate Division, were appealed. Id. at 262, n.2 (noting that Lucent had not cross-appealed the Tax Court's "ruling" that Lucent's "responses for 2005, 2006 and 2007 were false or fraudulent"). Thus, the limited issue before the Appellate Division was "whether the [Tax] court erred in interpreting" R. 8:7(e) by limiting the time to file a Chapter 91 motion that is "based upon false or fraudulent Chapter 91 responses." Lucent, 405 N.J. Super. at 265.

Consequently, when Lucent appealed the Appellate Division's ruling on the interpretation of R. 8:7(e) to the New Jersey Supreme Court, that Court only "consider[ed] whether there is a time limitation governing when a municipality may file a motion to dismiss a tax appeal that rests on the taxpayer's false or fraudulent account." Lucent Technologies, Inc. v. Berkeley Heights Twp., 201 N.J. 237, 239 (2010). The Court specified that the "issue raised in this appeal is a narrow one" involving an interpretation of "the interplay between the" Chapter 91 statute and R. 8:7(e). Lucent, 201 N.J. at 243. See also ibid. n.3 (reiterating that Lucent had not cross-moved nor "challenged" the Tax Court's oral finding that Lucent's Chapter 91 responses "were false or fraudulent").

In sum, the Tax Court in Lucent rendered an oral decision as to the false or fraudulent aspect of the motions, where it stated that intent is irrelevant but not every omission falsifies a response. Lucent did not appeal this bench decision. Thus, this

12

issue, or the interpretation of the term "false," was never before the Appellate Division or the Supreme Court of New Jersey. Therefore, neither court opined or ruled on the meaning or interpretation of the term "false," nor did they comment on the Tax Court's bench opinion in this regard. This means that contrary to the Township's argument, there is no binding precedent from these higher courts on whether the term "false" should be interpreted literally as the Township argues, i.e., if an item of income as reported is not "true," then it must be "false."

The court agrees with the Township that generally words are accorded their plain meaning. See N.J.S.A. 1:1-1 (when construing New Jersey's statutes, "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language"). The commonly understood meaning of false is untrue (i.e., the opposite of true). "True" usually means an accurate statement of fact. False would then mean the opposite, i.e., the statement was inaccurate or incorrect. See e.g. Moulor v. American Life Ins. Co., 111 U.S. 335, 345 (1884) (when a "true" response is required, the word means one "which is conformable to the actual state of things," thus an "untrue" statement is one "which does not express things exactly as they are").

However, in a broader sense the word "true is often used as a synonym of honest, sincere, not fraudulent." Ibid. Therefore, and in the context of the issue at hand, the word true connotes/means a "good faith" response, which is "full, direct, and honest . . . without evasion or fraud, and without suppression, misrepresentation or concealment of facts with which the" proponent of the question "ought to be made acquainted." Id. at 345-46. "It follows that 'false' should be construed to mean intentionally or wilfully [sic] untrue." Sentinel Life Ins. Co. v. Blackmer, 77 F.2d 347, 352 (10th Cir. 1935).

Even the dictionary's meaning of "false" is expansive. See e.g. Black's Law Dictionary 718 (10th ed. 2014) ("false," an adjective can mean "untrue . . . deceitful, lying" and "can be so by intent, by accident or by mistake"); Black's Online Legal Dictionary (2d ed.) ("[i]n law, [false] means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud").[8] Cf. A Dictionary of Modern Legal Usage 348 (Garner 2d ed. 1995) (when used "in a phrase such as false statement," the word "false" is "potentially ambiguous since [it] may mean either 'erroneous,' 'incorrect.' or 'purposely deceptive'") (emphasis in original). Based on a dictionary meaning then, "'false' is a word of double meaning." Sentinel Life Ins. Co., 77 F.2d at 351. But see Illinois Bankers' Life Ass'n v. Theodore, 34 P.2d 423, 427 (Ariz. 1934) (where

---

[8] Available at http://thelawdictionary.org

14

the "facts are presumably within the personal knowledge of the insured, and are such that the insurer would naturally have contemplated that his answers represented the actual facts," a misrepresentation of the same is false even if it lacks an intent to deceive).

Importantly, however, "words alone do not control, rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms." Loboda v. Clark Twp., 40 N.J. 424, 435 (1963) (citation omitted). Courts should consider the word at issue along with the "nature of the subject matter [and] the contextual setting," to decide the "import of a particular word." Ibid.

The underlying intent of Chapter 91 is for the property owner to timely provide the requested income information of an income-producing property to enable the assessor to set the property's assessment. However, the assessor is not bound to use that information in setting the property's assessment, and can choose to use it, reject it, or use portions of the same. See SKG Realty Corp., 8 N.J. Tax at 211 ("it is up to the assessor and not the taxpayer to decide whether to consider the information furnished"); Lucent, 405 N.J. Super. at 261 (the utility or otherwise of the sought-for information is "a decision . . . for the tax assessor"); ML Plainsboro Ltd. Partnership v. Plainsboro Twp., 16 N.J. Tax 250 (App. Div. 1997) (N.J.S.A. 54:4-34 is "solely permissive," thus an assessor "may seek information from a

taxpayer regarding an income producing property . . . or may refrain from" doing so, or "may confine an information request only to certain information subject to disclosure" or "could decide that the only kind of information relating to income producing properties which is sufficiently useful to aid in the valuation process is information relating to rents produced by properties leased to third parties").

To be balanced with the assessor's discretion on whether and how to use the provided information is the harsh consequence of the loss of appeal rights which are visited solely upon the property owner. See J & J Realty Co. v. Wayne Twp., 22 N.J. Tax 157, 163-64 (Tax 2005) (while N.J.S.A. 54:4-34 "requires a strict construction of the statute," if there is any "room for reasonable doubt" on the parameters of the Chapter 91 request, "the benefit of that doubt should be given to the taxpayer"). As the court noted, even in a non-response situation which "deprives the assessor of the most current income and expense information available for use in setting an assessment, the unavailability of that information does not affect an assessor's ability to assess a property." Id. at 165. This is because the Chapter 91 statute authorizes the assessor to "reasonably determine . . . the full and fair value" of the property at issue "from any information" that is "available to" or in "possession" of the assessor and set the assessment accordingly. Ibid.

The above factors collectively guide the court in deciding a Chapter 91 motion to dismiss a complaint. Based on the same, the court finds that a literal interpretation

16

of the word "false" should not end its inquiry. Given the purpose of the Chapter 91 statute, it cannot be read as having zero tolerance for innocent or inadvertent mistakes which do not involve intentional misrepresentations. If income of $100.50 is inadvertently reported as $100.05, it would be overly punitive to conclude that the inaccurate reporting equates to a false statement which requires dismissal of the valuation aspect of a complaint. Does it become "false" based simply on the mistaken amount such as if the income is entered inadvertently as $1,000 when it was meant to be entered as $100,000? The court thinks not. Even the Tax Court's bench opinion in Lucent recognized that not every omission is "false," thus, fatal to the property owner's appeal. Therefore, this court finds that the term "false" for purposes of Chapter 91 implicates a deliberate intent to falsify or misreport information, i.e., with knowledge of the same.

In this connection, the court incorporates and adopts the reasoning in an unpublished opinion, which is consistent with this court's reasoning above.[9] After a thorough review of the plain meaning of the word "false," the legislative intent of

---

[9] The court is aware R. 1:36-3 forbids the citation of an unreported opinion implying it has precedential value when it does not. However, the court is not barred from adopting the reasoning therein as its own. See e.g. Gottlob v. Lopez, 205 N.J. Super. 417, 421 (App. Div. 1985) (finding no violation of the "letter" or "spirit" of the court rule here a trial judge "referred to his earlier [unpublished] opinion for consistency and not as precedent").

17

Chapter 91, and the deprivation of appeal rights of a taxpayer, Judge Novin concluded as follows:

> [A] literal reading of the term "fraudulent" signals a deliberate state of mind and actions intended to deceive another. However, the word "false" may, but does not always, require intentional conduct or implicate a party's state of mind . . . .
>
> . . . .
>
> Although the court's review of the legislative history provides little insight into the intent of our Legislature, this court construes the term "false" to include some knowledge of falsity and embodies an element of materiality. If state of mind was wholly irrelevant as it relates to a "false . . . account," then including mention of the term "fraudulent" would be superfluous, which would be a disfavored reading of the statute . . . . Additionally, our Legislature, by expressing the view that taxpayers must furnish relevant and pertinent information which may affect the valuation and assessment of property, conferred an element of materiality on the information to be supplied.
>
> . . . .
>
> The court is not convinced that in enacting Chapter 91 our Legislature intended taxpayers to face the harsh appeal preclusion consequences when a timely, good faith response to a Chapter 91 request was furnished which inadvertently excluded, overstated or understated property or income and expense information . . . . If following a hearing, the court concludes that the responding party was disingenuous, had unclean hands or was deliberately attempting to secure an advantageous assessment, Chapter 91 would mandate dismissal of the tax appeal. Conversely, if the court concludes that the offering party in good faith timely supplied information in response to a

18

Chapter 91 request and accidentally or inadvertently omitted information which was otherwise inconsequential in fixing the tax assessment, the court can exercise its equitable powers and deny a municipality's motion to dismiss.

[Alcatel-Lucent USA, Inc. v. Berkeley Heights Twp., 2016 N.J. Tax Unpub. LEXIS 43, *40-44 (Tax Sep. 8, 2016).]

In sum, the court concludes that it is not foreclosed from examining the facts when it is alleged that the property owner made a false statement for purposes of Chapter 91.

Here, plaintiffs did not omit reporting the gross base rental income of the subject properties. Rather, plaintiffs' owner mistakenly inputted their monthly, not annual, gross base rental income. The inputted amount was "full" (the entire amount was reported) and "true" (the exact amount as shown on the lease was reported). There is no dispute that plaintiffs' owner accurately reported the rentable area of the subject properties and provided all information required under the schedule (tenant name, lease period, escalation income, and the like), none of which is disputed or alleged to be false. Plaintiffs' owner credibly testified that tax year 2025 was his first time responding to Chapter 91 requests, and his error was inadvertent since he relied on the rent rolls to provide income information, which are always internally maintained on a monthly, not annualized basis.

19

Based on all the facts, including the credible testimony of plaintiffs' owner, the court finds that plaintiffs' owner's failure to multiply the monthly gross base rental income by twelve and input that amount in Part 4, Schedule A of each statement accompanying each Chapter 91 request was an unintentional, inadvertent mistake. While the mistake did underreport the subject properties' gross annual base rental income, it does not require a conclusion that the magnitude of the dollar amount, *standing alone*, immediately converted the innocent mistake into a false statement for purposes of Chapter 91 (and as plaintiffs correctly note, the statute does not require the full and true account to be one that must be reported on an <u>annual</u> basis). Rather, the larger amount is simply a function of basic math, as was the automatic computation of the resultant PSF rent.

The fact that plaintiffs provided the annual gross base rental income in their Chapter responses to be used for tax year 2026, does not, by any means, render false the information supplied for the 2025 tax year (at issue here). If anything, it only shows that plaintiffs' owner did not repeat the error for tax year 2026.

Similarly, the fact that plaintiffs' owner did not review or verify the inputted information after he completed the Chapter 91 responses for the subject properties, and before their electronic submission, does not mean the responses continued to be false. As noted by this court, Chapter 91's "limitation on a taxpayer's appeal rights is material, substantial, and significant." <u>J & J Realty Co.</u>, 22 N.J. Tax at 163. Here,

20

plaintiffs' owner understood the type of income information that was requested but was simply careless when he inputted the monthly, instead of the annual gross base rental amount. The court finds that such an error is not a reason to close the appeal doors to plaintiffs. A balance of equities therefore is required. Under the facts presented to the court here, that balance weighs heavily in favor of plaintiffs.[10]

**CONCLUSION**

For the above reasons, the court denies the Township's motions to dismiss plaintiffs' complaints. An Order in conformity with this opinion will be entered by the court, and the matters will be set for further proceedings on their merits.

---

[10] The Township's assessor stated that "as part of [his] custom and practice in performing" the Township's "annual reassessment" he reviews Chapter 91 responses, and as part of that same "custom and practice" he "analyze[s] and utilize[s]" the responses for "reassessing" the responding property and "other similar income-producing properties." Thus, one could argue that the assessor reviewed the reported income for the subject properties but decided not to use the reported income information since the assessment for each property was nowhere close to their reported monthly rental amount. See n.3. Notably, and although plaintiffs reported the annual base gross rent for each property in Column 9, see n.4, for tax year 2026, the 2025 assessment for each property was carried forward as the assessment for tax year 2026.

In light of the court's conclusion denying the dismissal motions, the court does not need to address plaintiffs' two other arguments in opposition thereof, namely, that (1) the Township's requests were not compliant since they were not accompanied by a copy of the Chapter 91 statute, and (2) the motions were premature since discovery was needed to establish whether the assessor used the information to set each property's 2025 assessment.